No. 32.—WILLIAM HILLIARD, tenant, &c. plaintiff in error, *vs*. DOE, *ex dem*. R. CONNELLY, defendant.

[1.] The consent rule in ejectment is always considered as filed, and admits on the trial *lease, entry* and *ouster*, and it is, therefore, not necessary for the plaintiff to prove them.

[2.] The fictitious form of pleading in ejectment held to be sufficient.

[3.] The Act of 1837, authorizing and requiring the Governor and the Secretary of State, Surveyor and Comptroller General, to correct errors in grants and to issue alias grants: *Held* to be unconstitutional so far as the rights of third persons, other than the State and the original grantee are concerned.

[4.] If a grant be void upon its face, or be issued without authority, or against a prohibition in a Statute, or if the State has no title, it may be impeached collaterally in a Court of Law. But in general, other objections and defects must be put in issue by a regular course of pleadings by *bill* or *scire facias*.

Ejectment, in Stewart Superior Court. Tried before Judge ALEXANDER, April Term, 1849.

This was an action of ejectment, filed in the usual form, wherein John Doe, on the demise of Richard Connelly, was plaintiff, and William Hilliard was defendant. Upon the trial, coun-

Hilliard *vs.* Connelly.

sel for defendant demurred on the ground that it did not contain the party's "charge, allegation or demand, plainly, fully and distinctly set forth." The Court overruled the demurrer, and defendant excepted.

Plaintiff's counsel offered in evidence an *alias* grant issued by His Excellency, George W. Towns, Governor, &c. to the plaintiff, by virtue of the provisions of an Act passed 25th December, 1837, "to amend an Act to authorize the Governor, Secretary of State, Surveyor General and Comptroller General, to correct any errors that may have taken place in issuing any grant or grants in any of the land lotteries of this State, passed December 22d, 1827."

The accompanying exemplification showed that all the provisions of the Act had been complied with. The original grant was older than the Act of 1827.

Counsel for defendant objected to the evidence. The Court overruled the objection, and defendant excepted.

When the plaintiff closed his case, defendant's counsel moved a nonsuit, on the ground that the plaintiff had not proven lease, entry and ouster, and no "consent rule" had been entered in the case.

The Court overruled the objection, and defendant excepted; and upon these several exceptions error has been assigned.

H. L. BENNING, for the plaintiff in error—

I. 1. In this State we have abolished the *technical forms* and requirements of the English pleadings. 2 *Kelly*, 258. 3 *Ib.* 81. 1 *Ib.* 70. 1 *Ib.* 257.

2. Actions of ejectment in the old form are no more "recognized" by the Act of 1834, entitled an "Act to authorize *plaintiffs in ejectment*," &c. than common counts in assumpsit are recognized by the Statute of Limitations in the words, "*all* actions upon *account* and *upon the case*." *Prince*, 473, 575. And common counts are not, by those words, at all recognized, and, therefore, are not sufficient. 3 *Kelly*, 80, 81.

3. Repeals of Statutes by implication, only take place where there is a "*positive repugnancy*" between their provisions. 5 *Ga. Reps.*

4. There is no repugnancy between the provision in the Act of

1799, in these words, viz : " Which petition shall contain the
plaintiff's charge, allegation or demand, *plainly, fully and distinctly
set forth,*" and those of any other subsequent Acts.

II. 1. The Act of 1837, (*Hotchkiss,* 396,) for amending an Act
authorizing the correction of errors in grants, &c. contains two
clauses, each specifying a different class of cases to which the Act
extends. The 1st clause is confined to errors in the " respective
*offices*" of the Executive ; and of these errors to those which were
*past* " that *may have taken place.*" The 2d is confined to *future*
errors, those which " may *hereafter* (thereafter) take place."

2. The errors attempted to be corrected by the Governor, &c.
in this case, were errors in a *grant,* and, therefore, they were not
within the operation of the first clause, and were errors in a
grant which was *older than the Act itself,* and they were therefore
not within the second clause.

3. Therefore, the Act neither gave nor thought of giving the
Governor, &c. power to correct them.

III. But if it was the intention of the Legislature to retro-
act upon errors in grants already made, then the Statute was one
" impairing the obligation of contracts," and, therefore, void by
the Constitution.

1. " A contract executed, as well as one which is executory,
contains obligations binding on the parties. *A grant,* in its own
nature, amounts to an *extinguishment* of the right of the *grantor,*
and implies a *contract not to re-assert that right.* A party is, there-
fore, always estopped by his own grant." *Fletcher vs. Peck,* 6
*Cranch,* (*Marshall, Ch. J.*) 137, 135.

2. To *re-grant* the land is to re-assert that right, and thus to
impair the obligation of the old grant; therefore, any act of a
State which attempts such re-grant is void.

3. Even if reasons exist which would be sufficient to justify *a
Court* in " impairing (or annulling) the obligation of a contract,"
such as *fraud* in obtaining it, or in the case of a charter to a cor-
poration, *nonuser* or *misuser* of the franchises, still such reasons
would not empower *the Legislature* to impair it. *Fletcher vs.
Peck,* 134, 135. *Young & Calhoun vs. The Harrisons,* 6 *Ga. Rep.*
155. And if such reasons as these cannot give the power to the
Legislature, much less can accident or mistake or error give it.
It is part of the contract that one of the parties to it shall not ad-
judge questions affecting its validity.

Hilliard *vs.* Connelly.

IV. 1. And the Constitution of Georgia provides, that " The Legislative, Executive and Judiciary departments of Government shall be distinct, and no person, or collection of persons, being of one of those departments, shall exercise any power properly attached to either of the others, except in the instances herein (therein) expressly permitted." *Pr. Dig.* 902.

2. The power to set aside grants, on the ground of their having been made by mistake, is properly attached to the Judiciary department. *Fletcher vs. Peck,* 6 *Cranch,* 133.

3. Therefore it cannot be exercised by the reasons attempted to be clothed with it by the Act of 1837, they being of another department—the Executive.

V. The tenant, Hilliard, never having entered into any "consent rule to *confess lease, entry and ouster,*" and never having, in fact, confessed either, and no proof having been made as to either, the motion for a nonsuit was well taken.    3 *Black. Com.* 203, 204, 205.

WELLBORN, for defendant in error—

Argued that the Act of the Legislature complained of as unconstitutional in the record of this case, was but the exercise of the familiar legislative function of providing a legal remedy. It does not propose to disturb the obligations of a contract; on the contrary, it does but provide a cheap and convenient method by which contracts, in certain cases, may be ascertained and executed.    In the cases of *Calder vs. Bull,* (3 *Dal.* 386,) and *Cooper vs. Telfair,* (4 *Dal.* 14,) and *Watson vs. Mercer,* (8 *Pet.* 88,) are instances in which more extended and doubtful displays of legislative authority in the direction of the Judiciary department were, by the Supreme Court of the United States, upheld and enforced. The true question raised by the first article of the Constitution, as we think, is not whether it was appropriate to the Judiciary to have furnished us a remedy in lieu of the one provided by the Act of 1837, but whether the proceedings had below by the different functionaries named in the Act, were, in their natures, appropriate to those functionaries under the direction and guidance of the Legislature; and our argument is, that the correction of their own mistakes in the issuing of the original grant, by reference to the books of file in their offices respectively, was an act in its na-

ture appropriate to them, and was, therefore, properly performed by them.

The Act provides for the giving of notice to the opposite party, and secures the opportunity of defence. It is, therefore, not unconstitutional. Had, however, the mode of procedure provided been wholly *ex parte,* this Court, in the case of *Nelson vs. Foster,* (5 *Ga. Reps.* 194,) ruled that it would not, for that reason, disregard the Act.

Should the Court deem the Act of doubtful constitutional validity, the rule is that it must be enforced. In the case of *Nelson vs. Foster,* just cited, the language of this Court was, that they " will not pronounce a Statute a nullity except in a plain and palpable case."

Finally, aside from the Act of 1837, it was competent for the Court below to receive testimony to prove the grant first issued to be void. *Patterson vs. Wynn,* 11 *Wheat.* 380. And assuming it to be true, that a mistake as to the identity of the drawer of the land was committed in the original grant, then the grant containing such mistake was a nullity.

The interrogatories read to the Jury, exposed the nullity of the original grant by disproving the identity of the nominal grantee therein with the drawer, and the application of the grant of the later date to the plaintiff in ejectment below.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] The consent rule, in our practice, is considered as filed, whether it is in fact filed or not. By this rule the defendant confesses, at the trial, the *lease, entry and ouster.* The issue is on the title, and the plaintiff is not compelled to prove *lease, entry and ouster. Cumming and others vs. Butler,* 6 *Ga. Reps.* 88.

[2.] We see no good reason for abandoning the fictitious form of pleading in ejectment. However absurd it may seem to be, and however unnecessary in fact, yet both the Legislature and the Courts have acquiesced in it since the organization of the Government, and it is familiar to the profession. The Legislature have authorized a departure from it, but have not made it obligatory. *Acts of* 1847, *Pamphlet, p.* 203. *See, also, a decision of this Court as to the form of an action in trover,* 6 *Ga. Rep.* 213.

[3.] The Act of 1837, so far as it affects the rights of third per-

Hilliard *vs.* Connelly.

sons, is, we think, unconstitutional. That corrections may be made of errors which have occurred, connected with the issuing of grants in the different offices at Milledgeville, under that Act, as between the State and the grantee, we do not doubt. Nor do we doubt that errors in the grant itself, may also be corrected where there is no conflict of interest or title. But when such corrections affect, as here, the interest of third persons, as, for example, the identity of the rightful grantee, and therein the title to the land, the corrections involve judicial functions, and if made are nullities.

We have more than once said, that we will not declare an Act of the Legislature void for unconstitutionality, unless it is plainly, palpably so. This law, to the extent indicated, is plainly, palpably unconstitutional. The departments of the Government are made separate and distinct by the State Constitution. The Legislature, except in the cases enumerated, are prohibited from the exercise of judicial powers. This case falls within none of the exceptions. They cannot exercise judicial powers, through agents or appointees. The Executive can exercise no judicial functions whatever. To prove the wisdom of the law-making, law-administering and executive powers being separate and independent, would be a work of supererogation.

The Act of 1837 authorizes and requires the *Governor, Secretary of State, Surveyor General and Comptroller General*, to correct any errors in their respective offices, which may have occurred in transcribing the name or names of fortunate drawers, or in any other matter or thing connected with the issuing of grants. It farther requires them to correct any errors which *thereafter* might occur in the issuing of grants to lands embraced in the Lottery Acts, upon application being made by the fortunate drawers at their respective offices. And upon the correction of the errors complained of, if the original grant is not produced, the *Governor* is required to cause an *alias* grant to issue, conforming to the correction made; such *alias* grant to enure and take effect from the date of the issuing of the original grant. The Act farther declares, that such *alias* grant shall be taken and held by the Courts of Law, in lieu of and as a substitute for the original.

It proceeds to require the *Governor* to give six months' notice of an application for an *alias* grant. Again, it empowers the *Governor*, when it is made to appear to him, that through mistake

or oversight in any of the offices, two grants have been or shall be issued to different individuals for the same land, to have the error corrected, and to set aside the grant improperly issued, and to correct such other errors as he may deem expedient where grants have been improperly issued. *Hotchkiss*, 396.

This Act confers very general and very great powers on the *Governor*—the power of correcting all errors in grants, and of issuing an *alias* grant. Now the power goes the extent of determining upon the number and quantity of the lot of land—upon the identity of the drawer, and, therefore, upon the title. The Legislature have attempted, in this Act, to clothe the *Governor* and Secretaries with the power to revoke the State's grant after it has issued, and to determine the rights of parties litigating under it, and to issue a new grant in conformity with any alterations he may make. It is a power over titles—it is jurisdiction over lands. By the nature of the Government, and by express constitutional enactment, the Legislature can bestow, and the Governor exercise, no such powers.

The case made by the record illustrates, with singular aptness, the truth of what I have stated, as to the extent and effect of this power. Here is an action brought for the recovery of land. The defendant claims under a grant to Laurance Connelly's illegitimates, and the plaintiff claims under a corrected grant to Laurana Connelly's illegitimates. Now, here is a contest about title to land. One party claims to be the rightful drawer, being an *illegitimate*, and holds the first grant. The other party claims to be the rightful drawer, as the *illegitimate children of Laurana Connelly*, and they hold the *alias* or corrected grant. The *Governor*, under the Act of 1837, has annulled the first grant, determined upon the conflict of title under it, and issued a new grant to the prevailing party. Now, if the Act of 1837 is allowed to prevail, what is the effect? It is this, to wit: the very question before the Court—the ownership of the land—has been adjudged by the Executive, and the *Court* is concluded by that judgment. The Court is thus divested of its appropriate, and, indeed, exclusive function—the trial of the right of property in lands. Some points are argued when stated. This is one. So long as this correcting power does not come in conflict with the rights of others than the State and the original grantee, it is harmless; but when it does, the Courts must consider it as a mere nullity,

Hilliard *vs.* Connelly.

because the exercise of judicial functions. The Constitution establishes certain Courts, and provides for such other Courts as the Legislature may, from time to time, ordain and establish. It may be said, that under this grant, the Legislature may and have created a Court for the especial purposes of the Act of 1837. To which idea there are two replies. *First*, it is by virtue of the constitutional separation of *Executive* and *Judicial* powers, impossible that the *Governor* shall become, in any form, a Judge to determine the rights of the citizen. *Second*, the Constitution has given to the *Superior Courts exclusive* jurisdiction over titles to lands. It cannot be vested any where else. *Prince*, 909, 910.

I have said that the power conferred by this Act is very large. It is difficult to prescribe limits to it. It extends to the correction of all such errors as the *Governor may deem expedient* when grants have improperly issued; and where two grants have been issued by mistake or oversight, to *set aside the grant* improperly issued. It involves the power to revoke the State's grant issued by authority of the Legislature. The correct view of this whole matter is this: the State, who is the grantor, by Act of the Legislature, and through the Governor and the Secretaries, after its grant has issued, assumes the power to revoke it; to judge of the regularity of its issue, of the rightful investiture of the grantee, and to pass upon antagonist claims of citizens under it. Although the power is claimed to be the correction of merely clerical errors, yet the effect of the exercise of that power is what I have stated. If so, very vital and practically important principles are involved. When the State issues her grant, under her great seal, she cannot recall it. It is the irrevocable testimony that she has divested herself of the thing granted. Grants do not exist as title against the State during her pleasure. If the Government can recall its grant for one cause, why not for all causes? If it can at all, it is a pure despotism. The grant, when it has issued, is a contract. One party to a contract cannot set it aside, although that party be a sovereign State. If conflicting claims or rights or interests spring up under that contract, by reason of mistake, error, fraud, or any other cause, the Courts of Justice are open for their adjustment. See *Terrett and others vs. Taylor and others*, 9 *Cranch's S. C. R.* 43 to 45. *Fletcher vs. Peck*, 6 *Cranch's S. C. R.* 87 to 148. *Duncan vs. Beard*, 2 *Nott &*

*McCord,* 400.    *Town of Paulett vs. Clark et al.* 9 *Cranch,* 292.
*Polk's Lessees vs. Wendell,* 5 *Wheat.* 293.

I apprehend it is well settled that it is competent for the Courts of Justice to impeach patents or grants for land; and if so, all the benefits of the Act of 1837 are secured.   In *Patterson vs. Wynn,* the Supreme Court of the United States say, " We may therefore assume, as the settled doctrine of this Court, that if a patent is absolutely void upon its face ; or the issuing thereof was without authority ; or was prohibited by Statute ; or the State had no title, it may be impeached collaterally in a Court of Law, in an action of ejectment."   But in general, other objections and defects complained of, must be put in issue, in a regular course of pleadings, in a direct proceeding, to avoid the patent.   11 *Wheat.* 380. 5 *Wheat.* 293.   In England, letters patent, as a general rule, can only be avoided by *scire facias,* sued out on the part of the Government, or some individual in its name.   Where there are two patents for the same thing, it seems that either patentee may sue out the writ.   4 *Prest.* 88.   *Dyer,* 197, *b.*   *Hunt vs. Coffin, Dyer,* 198, *a.*   *Jenk. Cont.* 126, *case* 56.   *The King vs. Butler,* 3 *Lev.* 220.   *The King vs. Amery,* 2 *Term Rep.* 515.

A Court of Chancery will set aside a patent for fraud, irregularity, or mistake.   *The Attorney General vs. Vernon,* 1 *Ver.* 277, 370.   1 *H. & M.* 23, 92, 165.   2 *H. & M.* 201, 244.   1 *Ibid,* 187, 190.   1 *Munf.* 134.   *Jackson ex dem. Marcius vs. Lawton,* 10 *John. Rep.* 22.

Formerly, under our head-right laws, an appeal lay upon a *caveat* to the issuing of a grant, to the Governor.   Afterwards, and, I have no doubt, because of the unconstitutionality of such appeal, this law was repealed, and an appeal authorized to the Superior Courts.   *Prince,* 522, 523, 529, 540.

The imperfectness of the tribunal created by the Act of 1837, is manifest to all.   It is without the forms, the rules of evidence, and the necessary aids and helps of a Judicial tribunal.   Notice of an application for an *alias* grant, is required to be given; but who may defend, or how, or to what extent, is not prescribed. Again, no Jury is provided.   No man can be divested of any right of property which he claims, but by judgment of his peers,

Again, the Act is unconstitutional, because the Constitution requires that cases involving titles to lands, shall be tried *in the coun-*

*ty where the land lies;* and they cannot be, therefore, tried at *Milledgeville,* unless the land in question lies in the county of *Baldwin.*

It is no reply to this reasoning, that the State may prescribe terms to the issuing of her grant. That is not denied. All the questions which are made, or can be made, under the Act of 1837, originate *after a grant has issued.* All such questions, so far as third persons are concerned, in our judgment, belong to the Courts.

Let the judgment be reversed.