## BREWSTER v. WOOLDRIDGE.

The common law action of ejectment was not affected, nor the provisions of the code applicable thereto repealed, by the pleading act approved December 15th, 1893.

Submitted June 15, 1896. Reargued January 29,—Decided February 26, 1897.

Ejectment. Before Judge Beck. Marion superior court. October term, 1895.

*C. J. Thornton* and *Blandford & Grimes*, for plaintiff. *Brannon, Hatcher & Martin*, for defendant.

ATKINSON, Justice.

On April 3d, 1894, the plaintiff brought an ordinary common law action of ejectment against the defendant. There was an attempt to subdivide the action into various paragraphs, which, however, was wholly ineffectual. The defendant demurred to the declaration, upon the ground that it was insufficient in law, was not prepared in compliance with the terms and provisions of the pleading act approved December 15th, 1893 (Acts 1893, p. 56), and set forth no cause of action in such manner as that it could be intelligently answered by him in accordance with the provisions of that act. The demurrer was sustained, the declaration dismissed; and the plaintiff excepted.

We are now to inquire whether, under the act referred to, the common law action of ejectment, as a remedy for the recovery of the possession of land and the trial of titles to land, is abolished. It would be unprofitable here to state the origin, and to inquire into the history of this form of action. The best argument to be found in favor of its utility, and of its adaptability to the purposes to which it has heretofore been applied, is to be found in the fact, that wherever in this State titles to land have been called in question, the legal profession has with singular unanimity turned to this as the best and simplest method of bringing to the attention of the court the real issue, as to which party, whether plain-

20

tiff or defendant, had the better title to the premises in dispute. By the application of the consent rule, which admitted lease, entry and ouster, and that other rule, adopted by the judges in convention, which required the defendant, before he pleaded to an action of ejectment, to admit his possession of the premises claimed, the courts have been enabled to strip the action of all superfluous matter, and bring the parties to a direct issue upon title alone; and notwithstanding all the legislation which has occurred heretofore in · Georgia looking to a reform of our methods of procedure, this form of action, commended by considerations of utility and simplicity, has alone survived.

The judiciary act of 1799, which created our judicial system, after providing for the organization of the several courts in which justice was to be administered in this State, laid down the following as the method of procedure in those courts: "All suits of a civil nature, cognizable in the said courts respectively, shall be by petition to the court, which petition shall contain the plaintiff's charge, allegation or demand, plainly, fully and distinctly set forth"; and yet, notwithstanding this apparently positive direction as to the method to be employed in the preparation of the plaintiff's declaration, this court, in the case of *Hilliard* v. *Connelly,* 7 *Ga.* 172, held, that the fictitious form of pleading in ejectment was sufficient, and that this form of action had not been abolished by that act.

By an act approved December 27th, 1847, the General Assembly provided permissively another form of action by which titles to land might be tried. This form of action is to be found in section 3389 of the Code of 1882. (See Civil Code, §§4972, 5007.) . The act approved October 24th, 1887, was one general in its scope, designed as a revision of our judicial system, in so far as the law of pleading was concerned; and after stating at length the changes designed to be made, it preserved in its entirety, by saving from the operation of the sweeping changes made in the law, "any

common law form of declaration now used." (Acts 1887, p. 64.) At the time of the passage of the act in question, the form of action now under consideration was the only one existing at common law which was of general use in the several courts throughout the State. So that the preservation of this form of action may be taken to be an express declaration upon the part of the General Assembly that it should survive.

Subsequently in 1893, by an act approved December 15th of that year, the General Assembly enacted that, from and after the passage of that act, "the plaintiff in all civil actions commenced by petition, in any of the courts of this State, shall set forth his cause of action in orderly and distinct paragraphs numbered consecutively. That in all such cases, when the defendant desires to make a defence, by plea or otherwise, he shall therein severally and distinctly answer each paragraph of plaintiff's petition, and shall not, as heretofore practiced in this State, file a mere general denial commonly known as the plea of general issue." It was further provided, "That any averment distinctly and plainly made in the plaintiff's petition, which is not denied by the defendant's answer, shall be taken as prima facie true, unless the defendant states in his answer that he can neither admit nor deny such averment because of the want of sufficient information."

It is insisted that this latter act had the effect to abolish the form of action employed in the present case. In construing an act of the General Assembly, such a construction will be placed upon it as will tend to advance the beneficial purposes manifestly within the contemplation of the General Assembly at the time of its passage; and courts will hesitate to place such a construction upon its terms as will lead to manifestly absurd consequences, and impute to the General Assembly total ignorance of the subject with which it undertook to deal. Construing this act of 1893 in this spirit, we cannot believe that the General Assembly had in view

a purpose to strike down the only system which prevailed, either at common law or under the statute, for the trial of titles to land. Fiction has its uses in law as well as in literature. All of the great presumptions which underlie the property and personal rights of the citizen rest largely upon fiction. The presumption of innocence with which one is clothed when indicted for the commission of a criminal offense is largely a pure figment of the imagination, and in many instances directly contrary to the true facts of the case. The presumption that one is in the possession of his personal goods at all times likewise rests upon fiction. Such possession is oftentimes constructive merely, and rests on fiction alone. Illustrations might be multiplied indefinitely; and, therefore, any effort upon the part of the General Assembly to extinguish fiction as a factor in the administration of the public justice must necessarily prove futile. If the act of the General Assembly now under review were taken literally, it would be impossible to try an action of ejectment, either under the common law form, or under the form prescribed by section 3389 of the Code of 1882. Both of these are actions which are to be commenced by petition addressed to the superior court.

To illustrate the proposition last announced, we will consider for a moment an action of ejectment to try the title to unoccupied premises, brought under the form prescribed by section 3389. The first allegation that the plaintiff makes, according to the form there prescribed, is that the defendant is in possession of the tract of land which is the subject of the suit. According to the method of procedure now of force in this State, that allegation would be immaterial; for, under the consent rule of lease, entry and ouster, extended as it has been by a rule of court, which requires the defendant to admit possession before he is allowed to plead to an action of ejectment, the possession ceases, upon filing the plea, to be an issuable question in the case. Whereas, in a suit brought under the act in question for the same purpose, it

would only be necessary for the defendant to deny his possession, and whatever may have been the rights of the respective parties, in so far as their titles were concerned, a nonsuit must inevitably have resulted.

It is argued that the purpose of the General Assembly, in the passage of this act, was to eliminate fiction as a factor in the administration of the law. If this be true, then the fiction which charges the defendant with possession when he pleads to the action, under the rules of procedure heretofore of force in this State, could not properly be applied. He admits nothing stated in the plaintiff's petition to which he makes a direct answer, and therefore, having denied possession, he could not be logically held to have admitted it. Both the action of ejectment as at common law, and complaint for land as the latter existed under our code, were originally mere possessory actions; but the rule of the superior court which first required the defendant, in an action of ejectment proper, to admit possession as a condition precedent to his being permitted to plead, so far changed the character of the action as to eliminate entirely the question of possession, and refer the contesting parties to the titles under which they claimed the right of possession.

It was for a long time held in this State, that under an action of complaint for land, the plaintiff could be nonsuited if he failed to show the defendant in actual possession, and it was expressly held by this court, in the case of *Gabbett* v. *Sparks*, 60 *Ga.* 582, that the rule of court theretofore of force in this State, which required the defendant, in an action of ejectment, to admit possession, did not apply to an action brought under the section of the code to which reference is hereinabove made. This, however, was subsequently changed by a rule of court, adopted by the judges in convention, and now the action may be well maintained, whichever of the two forms be employed. In both the common law action of ejectment and the statutory form, the plaintiff is required to set forth clearly, fully and distinctly the

title upon which he seeks a recovery. In the former, the several demises contain a statement of the title relied upon by the plaintiff; and in the latter, the plaintiff is required to attach an abstract of title to his petition. There is no requirement, under the present statute, that anything of this kind should be done. The plaintiff would only be required to allege in general terms that he was the owner, that the adverse party was in possession, and that he claimed the right of possession, without stating in such manner as to inform the defendant of the nature of the title, which he was required to meet, and the sources from which plaintiff derived his title.

There are large areas of unoccupied territory in this State, the titles to which may, in many instances, be unsettled. Under the present system of pleading, actions may be brought to settle the question of title without actual occupancy, and it would be difficult in the extreme to conceive a purpose in the legislative mind to take away the only remedy existing for the trial of that class of actions, without substituting another which could be appropriately applied to that purpose. If this court concurred in the judgment of the court below, and held this action would not lie in its present form, it would be necessary, in order to give full expression to the rights of parties at issue, for it to create a new remedy in the formation of which both fact and fiction must necessarily largely enter. In view of the fact that during nearly an hundred years of the history of this State, the General Assembly and the courts have uniformly upheld and preserved this form of action, and in view of the manifest inconvenience and injustice which would result from its abolition without making adequate provision for the conditions it was designed to meet, we do not feel at liberty to impute to the General Assembly, in the absence of direct words to that effect, a purpose to repeal the salutary provisions of the code relating to the trial of actions of ejectment proper; and we are more readily induced to this con-

clusion from the consideration that, in the application of this act to suits arising out of ordinary commercial transactions, and to suits arising from the infliction of personal torts, we have found ourselves unable literally to apply it. The wisdom of the General Assembly may suggest a better means for the trial of titles to land; but the writer ventures the opinion that human ingenuity has never yet been and never will be able to evolve a system which surpasses-in utility the one now under consideration, or one more simple, when it is thoughtfully studied, carefully considered and well understood.

We conclude, therefore, that the action was well brought in the form employed, and that the court erred in sustaining the demurrer.

*Judgment reversed. All the Justices concurring.*