## HOUSTON *et al.* v. THE STATE.

1. A grant under the "headright laws," which is apparently issued conformably with law, is not open to collateral attack.

2. When it is shown that a muniment of title can not be produced, parol evidence as to its contents is admissible, and has the same probative value as original evidence.

3. The Penal Code, §588, makes it a misdemeanor for a person without authority from the owner of a private bed in which oysters are planted

to take or catch any oysters therein. Relatively to a trespasser who is indicted under this section the ownership of the oysters is immaterial.

4. The evidence authorized the verdict, which was approved by the trial judge.

Argued November 20,—Decided December 21, 1905.

Indictment for misdemeanor. Before Judge Seabrook. Bryan superior court. August 26, 1905.

This case came to this court upon exceptions by Cuffy Houston and Ned Maxwell to the overruling of their motion for a new trial. They were tried upon an indictment framed under the Penal Code, §588, charging them jointly with the commission of a misdemeanor, in that, on a day named, they did "take from the private bed of Silas B. Rogers, the owner thereof, oysters of the value of one and 50/100 dollars ($1.50), without authority from said owner," contrary to the laws of this State, etc. Both were convicted. Aside from the general grounds that their conviction was contrary to law and the evidence, complaint is made in the motion for a new trial that the presiding judge erred in refusing to direct a verdict of not guilty, on motion of their counsel made after the conclusion of the evidence for the prosecution, and the verdict of the jury is specifically assailed on the grounds, (1) that there was no evidence introduced by the State in support of the allegation in the indictment that the oysters taken were the property of Silas B. Rogers, but, on the contrary, the ownership, if any, was proved to be in the Belvedere Oyster Company, a copartnership consisting of Ira G. Rogers, Edward Rogers, and Silas B. Rogers; and (2) that "the State failed to show any title in the said Silas B. Rogers to the salt marsh where it is alleged the oysters were taken, no complete chain of title having been shown." The motion for a new trial also contained an assignment of error on the admission in evidence of a grant from the State to Philip D. Cory, which the movants characterized as a grant "conveying a tract of salt marsh in which there was admittedly not a foot of high or habitable land capable of being cultivated, and which was admittedly submerged entirely by salt water every high tide, recurring twice each twenty-four hours." The objection urged against the admission of this grant was that "such lands were not subject to be granted by the State under any laws thereof, and any grant purporting to convey such lands was void, as being contrary to law, without authority of law, contrary to the

policy of the law, and therefore constructively fraudulent; and such a grant therefore could not operate to destroy the public right of fishery in such lands." The grant was dated August 28, 1890, and referred to an annexed plat of the land, which was described in the grant as a "tract or parcel of land containing nine hundred and seventy-six acres, situate, lying, and being in the county of Bryan," and having certain designated boundaries. A map of this tract, showing its shape and boundaries according to a survey made August 15, 1899, and duly recorded, was also introduced by the State. Across that portion of the map which represented the tract surveyed were written the words, "Philip D. Cory, 976 acres marsh lands."

*G. W. Beckett* and *N. J. Norman,* for plaintiffs in error.
*Livingston Kenan, solicitor-general,* and *W. B. Stubbs,* contra.

EVANS, J. (After stating the facts.) 1. The grant to Cory was not open to collateral attack unless it was patent on its face that it was void or issued without authority of law. Civil Code, § 3220; *Hilliard* v. *Connelly,* 7 *Ga.* 172. This grant was issued under the headright system, which counsel for the plaintiffs in error contend is not applicable to marsh lands, but only to habitable and cultivatable lands. As supporting this view, we are referred to the various headright laws. See Prince's Dig. 517, 521 et seq.; Cobb's Dig. 660-680. The conclusion sought to be drawn is, that if this contention be sound, then the grant issued without authority of law and should have been excluded from evidence. There is nothing in the grant to indicate that the land covered thereby is not inhabitable or cultivable. The grant refers to an attached plat on which the words "marsh lands" are written; but we can not say that the grant was not issued in accordance with law, nothing else appearing therefrom to indicate that the land was not such as could be legally granted. On its face the grant is perfectly regular, and apparently it was issued conformably to law. Upon the abolition of the land court the ordinary was vested with authority to discharge all the duties which, under the various headright laws, devolved upon the land court. When the application for the grant was before the ordinary, his decision that the land could be lawfully granted was judicial in its nature, and it is entitled to all of the presumptions which usually attach to judgments rendered by a court of competent

jurisdiction. So far as the papers themselves disclose, it may be that, while the bulk of the land was marshy, there was in this large tract more or less high ground, which rendered it habitable and suitable for settlement and improvement. Hence, if we concede, for the purposes of the argument, that land unfit for settlement and cultivation does not come within the operation of the headright laws, and that a fraud may have been perpetrated by the applicant for the grant in representing that the marsh lands were cultivable, in whole or in part, or could be made so, yet the fraudulent procurement of the grant would not authorize a collateral attack upon it. Only in a direct proceeding to which the State was a party could it be set aside on the ground that it was improvidently granted or was procured by fraud. *Calhoun* v. *Cawley,* 104 *Ga.* 335. Even if the grant was not authorized by law, it is not open to collateral attack, its illegality not appearing on its face. *Vickery* v. *Scott,* 20 *Ga.* 795. It follows that the grant was properly admitted in evidence.

2. Counsel for the plaintiffs in error further insist that the evidence was insufficient to sustain their conviction, the State having failed to show title to the land in Silas B. Rogers. The grant from the State to Cory was introduced, and also a deed to the land from ·Cory to George L. Appleton. The State further proved, by parol evidence, that Appleton had conveyed the land by deed to Silas B. Rogers, but that this deed was not accessible, it having been either lost or misplaced by him. There was no objection to this secondary evidence of title from Appleton to Rogers. When it is shown that a muniment of title can not be produced, parol evidence as to its contents is admissible and has the same probative value as original evidence. It appeared by competent evidence that the title to the land upon which the alleged trespass was committed was in the person named in the indictment as the owner of the private bed from which the oysters were taken.

3. The further contention is made that there was a variance between the allegations of the indictment and the proof with respect to the ownership of the oysters. The proof was that the prosecutor, Silas B. Rogers, and his two sons had formed a partnership and were conducting business under the firm name of the Belvedere Oyster Company, and that they were jointly interested in the cultivation and sale of oysters which had been planted in the bed upon which the accused were charged with having committed a trespass.

The Penal Code, §588, makes it a misdemeanor for a person, without authority from the owner of a private bed in which oysters are planted, to take· or catch any oysters therein. Relatively to a trespasser who is indicted under this section, the ownership of the oysters is immaterial. The statute is designed to protect the owner of the land where the oysters are being cultivated; and when it appears that oysters are wrongfully taken from·a private bed of which he is the owner, the offense is established. The indictment in this case did not undertake to allege the ownership of the oysters, but only that they were taken from the private bed of Silas B. Rogers, the owner thereof, without his authority.

4. The evidence authorized a finding that the accused wrongfully and knowingly entered upon the lands of the prosecutor and took therefrom oysters which had been planted in a private bed belonging to him. The finding of the jury was approved by the trial judge, and we will not disturb the verdict on the ground that it was contrary to the evidence.

*Judgment affirmed. All the Justices concur.*