**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**November 1, 2024**

# In the Court of Appeals of Georgia

A24A0969; A24A0970. NOFREE, LLC v. THE STATE OF GEORGIA, and vice versa.

DOYLE, Presiding Judge.

These interlocutory appeals arise from a petition to quiet title filed by NoFree, LLC, regarding approximately 1,000 acres of coastal marshland in Bryan County ("the peninsula"), naming the State of Georgia and any other persons who may have an adverse claim, and contending it had title originating from the State's grant of the property to James Shuman in 1834 ("Shuman grant"). Only the State challenged the petition. After the parties filed cross-motions for summary judgment, the trial court determined that questions of material fact were presented and denied the cross-motions, certifying its order for immediate review. This Court granted the parties' applications for interlocutory appeal.

In Case No. A24A0969, NoFree argues that the trial court erred by denying its motion for summary judgment because, among other things, the boundary description in the Shuman grant was sufficient as a matter of law to convey the peninsula to Shuman (and to NoFree therefrom), and the trial court should have presumed that the Shuman grant was valid. In Case No. A24A0670, the State argues that the trial court erred by denying its motion for summary judgment because the Shuman grant was void for a number of reasons and did not vest title in NoFree in light of the Protection of Tidewaters Act, OCGA § 52-1-1, et seq. For the reasons that follow, we reverse and remand for the trial court to enter summary judgment for the State.

We review a grant or denial of summary judgment, questions of statutory interpretation, and interpretation of contracts of conveyance de novo.[1] And we construe the evidence in the light most favorable to the nonmovant when reviewing an order disposing of a motion for summary judgment.[2]

---

[1] See *Strickland v. CMCR Investments LLC*, 279 Ga. 112, 114 (1) (610 SE2d 71) (2005); *Herren v. Mitchell Elec. Membership Corp.*, 323 Ga. App. 517 (747 SE2d 63) (2013); *Hill v. First Atlantic Bank*, 323 Ga. App. 731, 732 (747 SE2d 892) (2013).

[2] See *Herren*, 323 Ga. App. at 517.

The record shows that NoFree filed a petition to quiet title as to all the world regarding a certain distinctively shaped piece of property near a large bend in the Ogeechee River.[3] The property is a long "balloon shaped" peninsula bounded on three sides by the river except for a narrow neck of land on the property's southwest side connecting it to the Bryan County mainland, and the peninsula consists largely of marshland that is subject to the ebb and flow of the tide. In 2016, NoFree acquired the peninsula via a limited warranty deed.[4] In its petition, NoFree included a chain of title of 49 links, beginning with the 1834 grant from the State to Shuman.

In May 1834, a State head-right warrant directed the county surveyor to survey and prepare a plat of "a tract of lands which shall contain five hundred acres in [Bryan] County" for Shuman. In September 1834, a survey plat was prepared that

---

[3] See OCGA § 23-3-60 et seq. See also Appendix 1, infra. NoFree's petition describes the area as "a marsh and rice island bound by the Ogeechee River and laced with canals and dikes for rice propogation."

[4] The seller's permitted exceptions attached to the limited warranty deed included, among others, "[t]itle, rights[,] and claims of the State of Georgia for any part of the insured premises which is determined to be Coastal Marshlands within the estuarine area as defined in the 'Coastal Marshlands Protection Act of 1970[;]'" and "[t]itle to that portion of the property lying below the mean high watermark of the Ogeechee River and all tributaries and branches thereof, and of all canals, creeks[,] or waterways adjoining, abutting or flowing through the captioned property, to the extent same are deemed to be navigable waters.'"

refers to the May 1834 warrant, which plat includes a hand-drawn sketch of the property showing a balloon-shaped peninsula with a small strip of land at the bottom; the entire peninsula is bounded on all other sides by the "Great Ogeechee River," and it is labeled as "James Shuman 500 acres Marsh Land."[5]

In December 1834, a grant was prepared giving Shuman property described as 500 acres lying in Bryan County, "butting and bounding on all sides by vacant lands . . . [h]aving such form, slope, and marks as appear by a plat of the same hereunto annexed[.]" The 1834 plat is very similar in appearance to the modern survey of the peninsula, which is now measured to contain approximately 1,000 acres.[6] Neither the Shuman grant nor the 1834 plat contain any language dividing the peninsula (apart from land beyond the southwestern neck by the mainland) between Shuman and any other party, including the State. It is undisputed that across the Ogeechee River from the peninsula is land located in what is now Camden County and to the southwest of the peninsula is land located in Bryan County.

---

[5] See Figure 2, infra.

[6] Compare Figure 1 and Figure 2, infra.

4

The State challenged the quiet title petition and later moved for summary judgment. The State's main contention was that Shuman's grant was void on its face and did not result in NoFree's ownership of the peninsula because the grant's description was insufficient to convey it to Shuman. Additionally, because the peninsula consisted of marshland, it falls under the Protection of Tidewaters Act. The Act requires a current landowner of protected property to trace their ownership to a valid grant from the Crown of England or the State. Among other things, the State also maintained that the land had been set aside for the citizens of a proposed town of Georgetown or Hardwicke in 1754. The State contends that the peninsula constituted commons after a dedication to Hardwicke's citizens, so the peninsula could not have been validly granted to Shuman in 1834. NoFree responded to the motion and filed its own cross-motion for summary judgment.

Per NoFree's request, the trial court appointed a special master to review the cross-motions for summary judgment, authorized the special master to hold an evidentiary hearing if necessary, and directed him to prepare a report and recommendation for the court. After the special master held an evidentiary hearing, he issued a report recommending that the trial court grant NoFree's motion for

summary judgment and deny the State's motion for summary judgment. The special master found that the Shuman grant and 1834 plat were clear in their combined description of land, the title chain was sufficiently legible to establish title as passing to NoFree from the Shuman grant, and the State had failed to rebut NoFree's evidence that the petition to quiet title should be granted.

The State objected to the report, and NoFree responded. The trial court heard additional argument from the parties regarding the special master's conclusions, the parties' motions, and parties' objections. Thereafter, the trial court issued an order denying the cross-motions for summary judgment.[7] The trial court explained that there were inconsistencies in the boundary language of the Shuman grant compared to the 1834 plat creating a question of fact for a jury to resolve; it also stated that other unspecified fact questions existed. The court noted that it was

> cognizant that this matter involves complex factual issues which necessitate the harmonious application of various bodies of law including OCGA § 44-5-13 and § 44-5-14, which allow for a presumption of a

---

[7] The trial court initially indicated that it was inclined to grant the State's motion on the basis that the Shuman grant contained "no mention of beds of tidewaters or marshlands and d[id] not explicitly convey the beds of tidewaters." After further argument from NoFree, however, the trial court issued an the order denying both motions based on remaining jury questions.

grant[,] and OCGA § 52-1-2, which requires an explicit conveyance of the beds of tidewaters and further states that grants are to be strictly construed with no presumption of an intent to part from any portion of public domain, unless clear and especial words are used to denote it.

This interlocutory appeal followed our grant of the parties' applications.

1. Generally, "[t]he title to all lands originates in grants from the Government and, since its independence, from the state."[8] "[A] grantee of lands [from the State] takes nothing by implication [and] is confined to the terms of his grant; but every presumption is in favor of a grant."[9] Moreover, except as to the State,[10] "[w]hen the land is subject to entry and grant, 20 years' possession of land under a claim of right shall authorize the courts to presume a grant."[11]

---

[8] OCGA § 44-5-1. "The form of grants heretofore used in this state is established, and a substantial compliance with such form shall be held sufficient." OCGA § 44-5-3.

[9] OCGA § 44-5-13. Compare *Black v. Floyd*, 280 Ga. 525, 526 (1) (630 SE2d 382) (2006) (reviewing the plaintiffs' claims to certain property based on "two Crown grants, which must be 'construed strictly against [them]'").

[10] See OCGA § 44-5-163 ("Possession of real property in conformance with the requirements of Code Section 44-5-161 for a period of 20 years shall confer good title by prescription to the property against everyone except the state and those persons laboring under the disabilities stated in Code Section 44-5-170.").

[11] OCGA § 44-5-14.

In 1992, the General Assembly enacted the Protection of Tidewaters Act in which it "declar[ed] that the State of Georgia became the owner of the beds of all tidewaters within the jurisdiction of the State of Georgia as successor to the Crown of England and by the common law."[12] The Act states that unless "title in a private party can be traced to a valid Crown or state grant which explicitly conveyed the beds of such tidewaters," then the State holds title.[13]

---

[12] OCGA § 52-1-2. See also *Jones v. Oemler*, 110 Ga. 202, 206-207 (35 SE 375) (1900) ("There can be no question that a State owns the beds of all tide-waters within its jurisdiction. It has as absolute jurisdiction and control over such territory as it has over any other property it may own. It has the same power to grant, sell, or lease such beds, or any portion thereof, to any of its citizens, upon any terms or conditions which its legislature might prescribe, to the same extent that it would have the right to dispose of its wild or other lands which it owns.").

[13] OCGA § 52-1-2 ("The General Assembly further finds that the State of Georgia, as sovereign, is trustee of the rights of the people of the state to use and enjoy all tidewaters which are capable of use for fishing, passage, navigation, commerce, and transportation, pursuant to the common law public trust doctrine. Therefore, the General Assembly declares that the protection of tidewaters for use by the state and its citizens has more than local significance, is of equal importance to all citizens of the state, is of state-wide concern, and, consequently, is properly a matter for regulation under the police powers of the state." And because of these findings, the Act authorizes "the commissioner of natural resources to remove or require removal of certain structures from such tidewaters in accordance with" the Act.).

As noted, the interpretation of a statute is a question of law.[14] If "two statutes are in conflict, the later-enacted statute prevails over the one enacted earlier, and the more specific statute governs over the more general one."[15] Silence on a point, however, does not constitute a conflict.[16] And all "statutes relating to the same subject matter are to be construed together, and harmonized wherever possible."[17]

2. NoFree argues that the trial court erred by denying its motion for summary judgment because the Shuman grant and 1834 plat were sufficient to convey title of the peninsula to Shuman and that it has established chain of title from the Shuman grant to itself. On the other hand, the State maintains that the grant description was indefinite and therefore invalid as a matter of law and that it cannot be salvaged by the evidence in the 1834 plat. Both parties contend that the trial court erred by finding that a fact question existed as to this issue.

---

[14] See *Harris v. Mahone*, 340 Ga. App. 415, 417 (1) (797 SE2d 688) (2017).

[15] *Bellsouth Telecommunications LLC v. Cobb County*, 305 Ga. 144, 151 (1) (824 SE2d 233) (2019), citing *Glinton v. And R, Inc.*, 271 Ga. 864, 866-867 (524 SE2d 481) (1999).

[16] See, e.g., *CL SNF, LLC v. Fountain*, 312 Ga. 416, 421 (863 SE2d 116) (2021), citing *Estes v. Jones*, 203 Ga. 686, 687 (2) (48 SE2d 99) (1948); *Hines v. Wingo*, 120 Ga. App. 614, 616 (3) (171 SE2d 905) (1969).

[17] *Hartley v. Agnes Scott College*, 295 Ga. 458, 462 (2) (b) (759 SE2d 857) (2014).

"The sufficiency of the description of property in a deed [or in this case a State grant] is a question of law for the court."[18] This Court has "deemed deeds to be in law unambiguous, when the description in a deed is sufficient in conjunction with undisputed evidence to determine the conveyance."[19] If "the descriptive clauses in a deed contain particular words of description, and also refer to a plat, and the plat is more definite than the particular words of description, the description by plat shall control as to the property conveyed."[20]

---

[18] (Citations omitted.) *Strickland*, 279 Ga. at 114 (1); accord *Atlanta Dev. Auth. v. Clark Atlanta Univ., Inc.*, 298 Ga. 575, 579 (III) (784 SE2d 353) (2016) ("The construction of a deed which is unambiguous is to be handled like any other contract, that is, it is a matter for determination by the court, and its meaning and effect are questions of law for the court.").

[19] *Gibson v. Rustin*, 297 Ga. App. 169, 174 (4) (676 SE2d 799) (2009); see *Second Refuge Church of Our Lord Jesus Christ, Inc. v. Lollar*, 282 Ga. 721, 725 (2) (653 SE2d 462) (2007) ("Generally speaking, the intent of the parties must be determined from the deed's text alone, and extrinsic evidence will be admitted to interpret the deed only where the deed's text is so ambiguous that its meaning cannot be determined through application of the ordinary rules of textual construction. Absent such ambiguity, there is no question of fact to be resolved by the fact-finder.").

[20] *Patrick v. Sheppard*, 182 Ga. 788, 790-791 (187 SE 379) (1936); *Crawford v. Verner*, 122 Ga. 814, 815-816 (50 SE 958) (1905) ("[I]f the tract be described as being known by a given name, or if reference is made to a more particular description in another deed or survey and plat, the instrument is prima facie good as a conveyance of title, and extrinsic evidence is admissible for the purpose of applying it to its subject-matter if there is in point of fact a tract of land which corresponds to the

The description in the grant conveyed to Shuman 500 acres of land in Bryan County "butting and bounding on all sides by vacant lands . . . [h]aving such form, slope, and marks as appear by a plat of the same hereunto annexed[.]" The 1834 plat shows a bulbous portion of land bordered on three sides by the Great Ogeechee River and is clearly marked "James Shuman 500 acres Marsh Land."[21] Pretermitting whether the language in the plat and the grant together satisfies the exception in OCGA § 52-1-2 that requires an explicit grant of tidewater beds to a private party (here, Shuman) because of the plat's incorporated reference to "Marsh Land,"[22] the grant is void.

---

description given in the deed."). Accord *Johnson v. Willingham*, 212 Ga. 310, 311 (1) (92 SE2d 1) (1956) (if a deed "fully describes the land conveyed by metes and bounds and refers to an attached plat representing them, the reference is not to enlarge or diminish the effect of the descriptive words of the conveyance, but to give them efficacy, and the operative words are found in the deed itself, and the metes and bounds description contained in the deed will prevail over the description shown by the plat where there is a difference in the two.").

[21] See Appendix 2, infra.

[22] Compare *Black*, 280 Ga. at 526-527 (1) ("[a] mere general reference to the requirement that . . . the grantee, clear and drain three acres of swamp, sunken grounds or marsh 'if any such contain herein' is not an explicit conveyance to him of the beds [of tideland]").

The peninsula as bordered by the river encompasses 1,000 acres of land.[23] Yet, the 1834 warrant instructed the surveyor to prepare a tract of lands containing 500 acres, and the Shuman grant through the incorporated plat reiterate this limit of 500 acres of marshland. It is the clearest indication in the documents of the intent of what the State attempted to grant to Shuman. And while the plat implies that the entire portion of the peninsula was granted to Shuman, he did not take a warrant for and was never granted 1,000 acres. And aside from the Ogeechee River, neither the 1834 plat nor the language of the grant contain a key or sufficient description from which it

---

[23] See Appendix 2, infra.

could be determined where Shuman's 500 acres lie within the 1,000 acre peninsula.[24]

Thus, this grant and plat are void for lack of an adequate description.[25]

If this case had involved two private parties, perhaps possession of the entire peninsula by NoFree and its predecessors based on color of title under the Shuman grant and plat would have been enough to defeat claims to the property by other

---

[24] See *Templeton v. Howell*, 288 Ga. 32, 33 (701 SE2d 185) (2010) ("In the . . . absence of a description of the one-acre tract with the required degree of certainty, [the document's] language needed to 'furnish a key by which [the one-acre tract] may be sufficiently identified by the aid of extrinsic evidence,' and, failing to do so, the devise of the property excepting that one-acre tract was void.") (citations and punctuation omitted). Compare *Dover v. Higgins*, 287 Ga. App. 861, 863-864 (652 SE2d 829) (2007) (explaining the evidence available to a jury to determine markers of property line in a boundary dispute); *Martin v. Patton*, 225 Ga. App. 157, 165 (2) (483 SE2d 614) (1997) (finding deed description sufficient "because all four boundaries were definite and certain, based upon a natural monument (creek), man-made boundaries (roads), abutting property lines, and the land lot line, even though the land lot line had not been previously surveyed and located on the ground, because the land lot line is an exact description that can be located on the ground").

[25] See *Luttrell v. Whitehead*, 121 Ga. 699, 700 (49 SE 691) (1905) ("A deed is not invalid where the description is imperfect, if the instrument refers to extrinsic data by means of which the land may be identified. Likewise an ambiguous descriptive clause may be aided by aliunde evidence. But such imperfect or ambiguous descriptions must not be confounded with a description utterly lacking in definiteness. A deed which fails to describe any particular land or to furnish any key to the confines of the land purporting to be conveyed is void."); *Martin*, 225 Ga. App. at 165 (2) ("If an area is indefinite and the description does not fix the boundaries, then the description is void."). See also *Strickland*, 279 Ga. at 114 (1).

13

individuals because the grant would have been presumed valid.[26] But this proceeding involves the question as between the State and NoFree, and neither prescription nor adverse possession apply against the State.[27] Therefore, no presumption of validity can save the void grant in this instance.[28] Because the Shuman grant is void, NoFree cannot trace its title to a valid state grant. Therefore, the State holds title to the peninsula under the Protection of Tidewaters Act.[29] Accordingly, the trial court erred by finding that issues of fact remained for jury determination regarding title to the peninsula, and we reverse and remand for the trial court to enter judgment in favor of the State.

---

[26] See OCGA § 44-5-14. See also *Houston v. State*, 124 Ga. 417, 420 (52 SE2d 757) (1905), citing *Calhoun v. Cawley*, 104 Ga. 335 (30 SE2d 773) (1897); *Vickery v. Scott*, 20 Ga. 795 (1856) (explaining that grants could not be collaterally attacked as void or invalid by a party other than the State); *Hilliard v. Doe*, 7 Ga. 172 (1849).

[27] See *City of Marietta v. CSX Transp.*, 272 Ga. 612, 613 (533 SE2d 372) (2000) (neither adverse prescription nor prescription apply against the State).

[28] See OCGA § 44-5-163. See also id. See also *Hilliard*, 7 Ga. at 179 (holding unconstitutional an act allowing for legislative correction of certain land grants, explaining that such unilateral action by the State was foreclosed unless it pursued the issue in court).

[29] See OCGA § 52-1-2.

3. Based on the forgoing, the parties' remaining enumerations of error are moot.[30]

*Judgments reversed and cases remanded with direction. Hodges, J., concurs specially and in the judgment. Watkins, J., dissents.*

---

[30] This includes the contention that the marshland at issue could not have been granted to Shuman based on a prior dedication to the town of Hardwicke and other arguments by the State that the warrant and grant were void for violations of various head-right grant laws of the time.

# Appendix 1



## Appendix 2



17

A24A0969; A24A0970. NOFREE, LLC. v. THE STATE OF

    GEORGIA, and vice versa.


HODGES, Judge, concurring specially.

I do not agree with all that is said in the majority opinion, but to the extent that

NoFree admits and the majority concludes that the entire property at issue constitutes

beds of tidewaters, I agree that this case must be reversed and remanded given the

clear and unambiguous language in the Protection of Tidewaters Act, OCGA § 52-1-1

et seq.[1]

---

    [1] This Act was enacted by Ga. L. 1992, p. 2317, § 1.

In OCGA § 52-1-2, the General Assembly states that it "finds and declares that the State of Georgia became the owner of the beds of all tidewaters within the jurisdiction of the State of Georgia as successor to the Crown of England and by the common law . . . except where title in a private party can be traced to a valid Crown or state grant which explicitly conveyed the beds of such tidewaters." "Tidewaters" is defined in the Act as "the sea and all rivers and arms of the sea that are affected by the tide, where the tide rises and falls, which are capable of use for fishing, passage, navigation, commerce, or transportation, and which are located within the jurisdiction of the State of Georgia." OCGA § 52-1-3 (4). The Coastal Marshland Protection Act of 1970, on the other hand, defines "marshlands" as "any marshland intertidal area, mud flat, tidal water bottom, or salt marsh in the State of Georgia within the estuarine area of the state, whether or not the tidewaters reach the littoral areas through natural or artificial watercourses." OCGA § 12-5-282 (3).[2]

In this case, pretermitting whether the description of land granted to Shuman was too indefinite to be sufficient, neither the 1834 deed from the State to Shuman nor

---

[2] This Act originally was enacted by Ga. L. 1970, p. 939, § 2 as OCGA § 12-5-281. The definitions were redesignated by Ga. L. 1992, p. 2294, § 1 as OCGA § 12-5-282. The definition of "marshlands" essentially has remained the same since the creation of the Act.

the 1834 plat description refers to the "beds of all tidewaters." OCGA § 52-1-2. The plat's reference to "Marsh Land" is insufficient to explicitly convey the beds of "tidewaters," as required by the Protection of Tidewaters Act. See *Black v. Floyd*, 280 Ga. 525 (630 SE2d 382) (2006). Our Supreme Court has considered this very issue:

> A mere general reference to the requirement that Sir Sterling, as the grantee, clear and drain three acres of swamp, sunken grounds or marsh if any such contain herein is not an explicit conveyance to him of the beds of Sterling Creek such as would show a clear intent on the part of the Crown to part with ownership thereof. Royal grants are construed strictly; and it will not be presumed, that the sovereign intended to part from any portion of the public domain, unless clear and especial words are used to denote it.

(Citation and punctuation omitted.) Id. at 526-527 (1). As in *Black*, the record in this case is insufficient to show a conveyance of any beds of tidewaters to Shuman as a predecessor in title to NoFree. Accordingly, judgment in favor of the State is warranted in this case.

3

A24A0969; A24A0970. NOFREE, LLC v. THE STATE OF
GEORGIA; and vice versa.


WATKINS, Judge, dissenting.

I respectfully dissent because I believe we should vacate, rather than reverse, the trial court's decision. The trial court denied the parties' motions for summary judgment on the ground that "the inconsistency between the boundary language of the grant and the language within the plat presents a question of fact that can only be resolved by a jury." This is not a valid basis to send the case to a jury, as "[t]he question of whether or not a description is sufficient to convey property[ ] is one of

law for the courts to decide."[1] And in this case, I depart from the majority and believe the grant conveying the property to Shuman was sufficiently definite. It is true that the grant described the land as being bounded "on all sides by vacant lands" while the plat depicted the land as being bound by the Great Ogeechee River. But the grant also described the land as "[h]aving such form, shape, and marks, as appear by a plat of the same hereunto annexed[.]" By referring to the plat, the grant provided a "key to the confines of the land purporting to be conveyed[,]"[2] and there does not appear to be any actual dispute as to what land was at issue. Indeed, in its brief in support of summary judgment, the State asserted that the land "is readily recognizable by its shape and form as the same Property which is claimed by Petitioner and is the subject of this litigation." Thus, unlike the majority, I would conclude that the Shuman grant adequately described the property at issue and was not void for being insufficiently definite.

Even though I would conclude that the Shuman grant adequately described the property, that conclusion does not fully resolve the parties' motions for summary

---

[1] *Murdock v. Ward*, 267 Ga. 303, 304 (1) (477 SE2d 835) (1996).

[2] See *Gould v. Gould*, 194 Ga. 132, 135 (1942).

judgment because the parties also argued that they were entitled to summary judgment for reasons unrelated to the sufficiency of the grant's description of the property. The trial court did not address those separate arguments in its order denying summary judgment. Therefore, in addition to vacating the trial court's order, I would remand the case for the trial court to consider the parties' remaining arguments in the first instance.