GATINS *v.* ANGIER.

1. Where the petition in an action for an alleged breach of a contract for the sale of land by the acre contained no description thereof other than that embraced in a written receipt, and set forth no facts whatever by which the land could be located or identified or its quantity ascertained, a motion to dismiss the petition, based on proper grounds, was rightly sustained, if the receipt in question was in its terms so vague and indefinite as to render it impossible to determine therefrom what land was therein intended to be described, or the quantity thereof.

2. A receipt in the words below quoted, except that letters of the alphabet are substituted for proper names, is an instrument having the defects above indicated. "Received of G. $25.00 as part purchase-money for a certain piece of land, described as follows : commencing about one hundred (100) feet from the land-lot line on M. & T.'s road and extending along said road four hundred and twenty (420) feet and running back a

uniform width to the S. land. Price to be $250.00 per acre, to be paid as follows : ⅓ cash, balance 6 & 12 months, with 8 per cent. per annum on deferred payments. Said G. to have ample time to have titles examined. I agree to have land surveyed at my expense. [Signed] A."

3. There was no error in sustaining the motion to dismiss the plaintiff's action.

Argued December 3, 1897. — Decided May 27, 1898.

Complaint for damages. Before Judge Reid. City court of Atlanta. January term, 1897.

Joseph F. Gatins sued Mrs. E. A. Angier in the city court of Atlanta. His petition was as follows : "The petition of Joseph F. Gatins shows : 1. That Mrs. E. A. Angier is a resident of Fulton County, Georgia. 2. She has damaged him in the sum of $3,025.00, by reason of the following facts, to wit : 3. On Nov. 8th, 1894, the defendant agreed with petitioner in writing, copy of which paper is hereto attached, to sell him that tract of land commencing at about 100 ft. from the land-lot line on the Mason & Turner's road, and extending along said road 420 feet, and running back a uniform width to the Sims land, for the sum of $250.00 per acre, and said land embracing about ten acres, the purchase-money to be paid as follows : 1/3 cash, balance in 6 and 12 months, with 8 per cent. interest on deferred payments. 4. Defendant received $25.00 in cash as part payment on said property. 5. It was expressly stipulated in writing that petitioner should have ample time in which to have the titles to the property examined, and that defendant would have the land surveyed at her expense. 6. Petitioner bought said land and turned over the papers to his attorneys for examination; and at the end of one week, they reported that they had examined the titles, and found them good to the property above described. 7. Petitioner made said trade through Thomas M. Smith, the agent of Mrs. E. A. Angier (defendant) in said trade. 8. Petitioner through said Thomas M. Smith, agent of defendant, as aforesaid, then notified the defendant that he was ready to pay 1/3 of the purchase-money as soon as the land should be surveyed according to agreement. 9. On Nov. 17th, the petitioner received a written notice from the defendant that she would not make him a deed to the above-de-

scribed property. 10. On Monday, Nov. 19th, petitioner demanded in writing that the defendant have the property surveyed according to her agreement, and that she carry out its other provisions; and notified her that he would hold her liable in damages for any loss he might suffer on account of her failure to carry out the provisions of her bond for title agreement. 11. Petitioner, not receiving any reply to his written demands, then went to see defendant in person, and insisted that she carry out her contract, and offered to carry out his undertakings under said contract in every respect. 12. Defendant on that occasion again refused to carry out the terms of the contract above referred to. 13. Petitioner, receiving no response to his letter above referred to (although he did not regard it necessary that he should make a tender of the money, as defendant had already failed to carry out the first condition of the agreement, to have the land surveyed at her own expense), nevertheless, through his attorney W. H. Black, tendered to defendant at her home on the afternoon of Nov. 22d, 1894, $800.00 in currency as the first payment under his bond for titles agreement with said defendant. This money defendant declined to receive from petitioner's attorney; she also declined to survey the property. 14. In consequence of this refusal of defendant to carry out the terms of her agreement, defendant has been damaged in the sum of $2,500.00, and in the further sum of $525.00 besides interest, &c., which he was and is compelled to spend as attorney's fees for the examination of said title and the bringing of this suit, &c. 15. Petitioner shows that, acting on the faith of said agreement referred to above, he sold said land at a profit of $2,500.00 to W. H. Landrum and John Schell, and received $25.00 as part payment in such trade, agreeing to make them deed as soon as he got title to the property. 16. Petitioner shows that the refusal of defendant to make him deed to said property prevents him carrying out his trade, as set forth in paragraph 15, and causing him a loss of the profit he had in said trade, to wit $2,500.00. 17. Wherefore your petitioner prays judgment of this court for the sum of $2,500.00, besides interest, as damages suffered by your petitioner on account of refusal of defendant to carry out the agree-

ment contained in her bond for title paper made to petitioner; and prays process of the court may issue requiring the said Mrs. E. A. Angier to be and appear at the next term of the city court of Atlanta, to answer your petitioner's complaint.

W. H. & E. R. Black, petitioner's attorneys."

The copy of the agreement attached to the petition was as follows: "Atlanta, Ga., Nov. 8th, 1894. Received of Jos. F. Gatins $25.00 as part purchase-money for a certain piece of land, described as follows: Commencing about one hundred (100) feet from the land-lot line on Mayson & Turner's road and extending along said road four hundred and twenty (420) feet and running back a uniform width to the Sims land. Price to be $250.00 per acre, to be paid as follows: 1/3 cash, balance 6 and 12 months, with 8 per cent. per annum on deferred payments. Said Gatins to have ample time to have titles examined. I agree to have land surveyed at my expense.

Mrs. E. A. Angier."

The defendant filed a motion to dismiss the petition. One of the grounds of the motion was, that "the land mentioned in the declaration is not and can not be identified by the pleadings as any particular land, under any contract alleged or any facts set forth in said declaration. Nor is any price for the total land, alleged to have been intended to be conveyed, set forth in the declaration." The petition was dismissed upon such motion, and the plaintiff excepted.

*W. H. & E. R. Black*, for plaintiff.
*N. J. & T. A. Hammond*, for defendant.

FISH, J. (After stating the foregoing facts.)· Before a contract can be enforced or a recovery had for a breach thereof, the subject-matter upon which it is intended to operate must be definitely ascertained. The terms of the contract may sufficiently identify the subject-matter, but where they do not, resort may be had to extraneous evidence of identification; parol evidence being admissible to apply a writing to its subject. The subject-matter of the case under consideration is land, but its description is not clearly set out, being as follows: "Commencing about 100 feet from the land-lot line on May-

son & Turner's road and extending along said road 420 feet and running back a uniform width to the Sims land." No land is specified by number of the lot or district. "Commencing *about* 100 feet from the land-lot line on Mayson & Turner's road" is exceedingly indefinite. What land lot? What line of the.lot? And in what direction from the line? "Extending along said road 420 feet and running back a uniform width to the Sims land" is equally vague. Is the distance of 420 feet along the road in a straight line, or is the road crooked? While extending back a uniform width from the road to the Sims land, on which side of the road, at what angles did the parallelogram touch the road, and at what angles did it come in contact with the Sims land? It is apparent that the shape and the quantity could be made to vary almost indefinitely by changing these angles. Therefore, neither the location, identification, nor quantity of the land intended to be conveyed by the contract can be ascertained from the terms with any degree of accuracy. The petition contained no description of the land, or reference to identification, other than that embraced in the contract, and, consequently, extrinsic evidence would have been inadmissible to prove what particular land the parties to the contract had in mind when it was executed. Wherefore we are clearly of opinion that the trial judge committed no error in dismissing the petition upon defendant's motion.

*Judgment affirmed. Simmons, C. J., and Lewis, J., dissented. The other Justices concurred.*