GOULD *v.* GOULD.

No. 14073. May 21, 1942. Rehearing denied June 16, 1942.

*W. C. Little,* for plaintiff.

*Conyers, Gowen & Conyers,* for defendant.

Reid, Chief Justice. ■ This is a land-registraton case in which Mrs. Jessie W. Gould sought to have her title to certain described lands in Glynn county registered under the provisions of title 60 of the Code Annotated. As the proceeding progressed James D. Gould Jr. objected to the registration of title in Mrs. Gould, asserted his own claim to the land, and sought its registration in his name. The examiner found in favor of the applicant, ruling out of consideration the deed on which the claim of the cross-applicant depended, for vagueness and indefiniteness of description. Exceptions of law and fact were taken, and the judge of the superior court held the deed of the cross-applicant good as against the objection, and submitted the exceptions of fact to a jury, who found in favor of the cross-applicant James D. Gould Jr. Mrs. Gould excepted to the overruling of her motion for new trial, and to certain rulings of law to which exceptions pendente lite had been taken.

Mrs. Gould showed title to a large tract of land on St. Simons Island, known as the "Black Banks" place, in Mrs. Deborah Abbott Gould. This included the small tract of about 8¼ acres now the subject of registration, and was conveyed by Mrs. Deborah Abbott Gould in 1887 to Joseph E. Gould, who in turn conveyed it to the applicant identified, and described the smaller tract for the purpose of having the title registered as follows: "All of that certain lot, tract, or parcel of land situate, lying, and being in the County of Glynn and State of Georgia, and on the Island of St. Simons therein, beginning at a stake in a mud flat near the center

of what is known as the Ebo tract on said Island, and running thence north 620 feet to an iron on the division line between said Ebo tract and the lands of the Glynn Haven Estates Inc., and running thence north 67¾ degrees west 650 feet to a live oak; thence 202 feet to an iron on the edge of the east bank of Dunbar Creek, and thence along the meanderings of the east bank of said Dunbar Creek to a stake which is on a course south 67¾ degrees east and 703 feet distant from the beginning point, and thence south 67¾ degrees east 703 feet to the point of beginning, all of which will more fully appear by reference to the map or plat made by W. N. Gramling, C. E., and County Surveyor, in September, 1936, a copy of which said plat is hereto attached and made a part hereof for all purposes of further description, the tract sought to be registered being the tract shown on said map as "claimed by Jas. D. Gould Jr., said tract containing 8.28 acres of land."

. In 1881 Mrs. Deborah Abbott Gould executed to James Dunn Gould her warranty deed to certain property described as follows: "A certain portion of land on Saint Simons Island, Glynn County, Georgia, bounded as follows, viz.: starting at an oak tree at a point above 'Elion Landing' on Dunbar's Creek, thence along said creek in a northwesterly direction six hundred and fifty (650) feet to a marsh, thence in an easterly direction six hundred (600) feet to a cedar post, thence south six hundred (600) feet to a cedar post, thence westerly to the point of starting. Containing 360,000 feet, more or less." The grantee in that deed conveyed by identical description to James D. Gould Jr., the cross-applicant, who contends that this is the same property sought to be registered, and that by reason of his prior recorded deed from the common grantor he is entitled to registration.

The applicant for registration under this Code title must "show when, how and from whom it was acquired, a description of title by which he claims the land, and an abstract of title. The applicant must allege and prove good title in himself, to warrant a decree awarding registration of title. Where the applicant for registration does not show that he has a good title to the land, his petition should be denied." *Rock Run Iron Co.* v. *Miller, 156 Ga.* 136, 141 (118 S. E. 670), and cit. The act itself provides that "The description of the land to be given in the petition shall be in such terms as shall identify the same fully, and such as shall tend

to describe the same as permanently as is reasonably practicable under all the circumstances," and "The judge, on his own motion or upon recommendation of the examiner, may, before passing a decree upon any petition for registration, require a fuller and more adequate description, or one tending more permanently to identify the tract in question, to be included into the petition by amendment." Code, § 60-207. In *Crawford* v. *Verner*, 122 *Ga*. 814 (50 S. E. 958), the court held: "A deed wherein the description of the property sought to be conveyed is so vague and indefinite as to afford no means of identifying any particular tract of land is inoperative either as a conveyance of title or as color of title." In the opinion we find the following: "One essential of a deed is that the description of the premises sought to be thereby conveyed must be sufficiently full and definite to afford means of identification. While it is not necessary that the instrument should embody a minute or perfectly accurate description of the land, yet it must furnish the key to the identification of the land intended to be conveyed by the grantor. If the premises are so referred to as to indicate his intention to convey a particular tract of land, extrinsic evidence is admissible to show the precise location and boundaries of such tract. The test as to the sufficiency of the description of property contained in a deed is whether or not it discloses with sufficient certainty what the intention of the grantor was with respect to the quantity and location of the land therein referred to, so that its identification is practicable. *Andrews* v. *Murphy*, 12 *Ga*. 431."

"A deed is not invalid where the description is imperfect, if the instrument refers to extrinsic data by means of which the land may be identified. Likewise an ambiguous descriptive clause may be aided by aliunde evidence. But such imperfect or ambiguous descriptions must not be confounded with a description utterly lacking in definiteness. A deed which fails to describe any particular land or to furnish any key to the confines of the land purporting to be conveyed is void." *Luttrell* v. *Whitehead*, 121 *Ga*. 699, 700 (49 S. E. 691).

"If the description is so indefinite that no particular tract of land is pointed out by the instrument itself, the description must be held so defective as to prevent the instrument from operating as a conveyance of title. *Huntress* v. *Portwood*, 116 *Ga*. 351, 356 [42 S. E. 513], and cases cited." *Crawford* v. *Verner*, supra.

"For a deed must itself contain descriptive words with respect to its subject-matter, such as will enable a third person to apply the same to the locus in quo without resorting to any secret and undisclosed intention on the part of the parties thereto." *Huntress* v. *Portwood,* 116 *Ga.* 351, 355, supra.

Under the foregoing rules, which have been applied in *Hamil* v. *Gormley,* 188 *Ga.* 585 (4 S. E. 2d, 471); *Darley* v. *Starr,* 150 *Ga.* 88 (102 S. E. 819); *Hunter* v. *Bowen,* 137 *Ga.* 258 (73 S. E. 380); *Stringer* v. *Mitchell,* 141 *Ga.* 403 (81 S. E. 194); *Brewton* v. *Brewton,* 167 *Ga.* 633 (146 S. E. 444); *Scoville* v. *Lamar,* 149 *Ga.* 333 (100 S. E. 96); *Williams* v. *Perry,* 136 *Ga.* 453 (71 S. E. 886), is the description in the deed on which the cross-applicant must rely sufficient to operate as giving him title? Its weakness in respect to defining the beginning point on locating the boundaries is, in our opinion, fatal. It is shown as "starting at an oak tree at a point above Ebo [Elion] Landing." It immediately occurs to inquire "at what oak tree," "how far above," etc. The nature of the description is such that it is made to depend on the certainty of this beginning. The conveyance was not of a known tract, nor, except as to one boundary, were the adjoining landowners named. It was not a conveyance of all the property owned by the grantor, but sought to carve out a portion previously unmarked or defined. A description similar to the one now under review was contained in the deed considered in *Crawford* v. *Verner,* supra, it being as follows: "All that tract or parcel of land containing six acres, more or less, situate in Franklin County on Towns creek, beginning at a white oak on east bank of Towns creek, thence north 38 w to a pine corner, thence 58 w to a white oak, thence down said creek to beginning corner," and the court held: "The description in the deeds offered in evidence in the present case was totally inadequate; the land was not described as a known tract, nor was its shape indicated, nor metes and bounds given, nor the names of the adjoining landowners on the different sides mentioned, nor were there any descriptive words employed which could serve to identify or locate the land."

Another case in which the description was quite similar to that of the description involved in this case is *Gatins* v. *Angier,* 104 *Ga.* 386, 389 (30 S. E. 876). The description there involved was as follows: "Commencing about one hundred (100) feet from the

land-lot line on Mayson & Turner's road and extending along said road four hundred and twenty (420) feet and running back a uniform width to the Sims land." In passing upon this description, the court said: "No land is specified by number of the lot or district. 'Commencing *about* 100 feet from the land-lot line on Mayson & Turner's road' is exceedingly indefinite. What land lot? What line of the lot? And in what direction from the line? 'Extending along said road 420 feet and running back a uniform width to the Sims land' is equally vague. Is the distance of 420 feet along the road in a straight line, or is the road crooked? While extending back a uniform width from the road to the Sims land, on which side of the road, at what angles did the parallelogram touch the road, and at what angles did it come in contact with Sims land? It is apparent that the shape and the quantity could be made to vary almost indefinitely by changing these angles. Therefore, neither the location, identification, nor quantity of the land intended to be conveyed by the contract can be ascertained from the terms with any degree of accuracy." It will be noted that in the present instance there is no mention of how far the oak tree is situated "above" Ebo Landing." The tree itself is not identified except as "an oak tree." There may have been many oak trees. It would require a liberal view to say that "above" as used in this description means to indicate north; but if given this meaning, we ask, how far north? The proof shows that "Ebo Landing" itself described a large tract of land, and that a large portion of the land involved is located on such Landing itself. The proof offered, including plats and testimony of engineers, was not sufficient aid to cause the *description* in the deed to identify any certain tract of land. A somewhat similar situation was dealt with in *Mason* v. *Nour,* 190 *Ga.* 62 (8 S. E. 2d, 14), where the description aided by a plat was held insufficient. The record in that case shows the vital weakness to have been in the uncertainty of location of a certain "stone" or corner, on which the remaining lines or boundaries were dependent. It is our view that the examiner reached the correct conclusion in holding against the claims of the cross-applicant, by reason of the insufficient description in the deed by which he claimed.

Direction is given that judgment be entered based upon the find-

ings of the examiner in favor of the applicant. Cf. *Holton* v. *Lankford,* 189 *Ga.* 506 (6 S. E. 2d, 304).

*Judgment reversed, with direction. All the Justices concur.*