S00Q0515. CITY OF MARIETTA v. CSX TRANSPORTATION, INC.
(533 SE2d 372)

FLETCHER, Presiding Justice.

CSX Transportation leases the Western and Atlantic Railroad from the State of Georgia, which owns the railroad right-of-way.[1] After CSX closed two pedestrian crossings in the City of Marietta, the city sued CSX to reopen them. The district court granted summary judgment to CSX, and the city appealed to the Eleventh Circuit Court of Appeals, which certified the following question to this Court:

---

[1] See OCGA §§ 50-16-100, 50-16-101.

"Can the public acquire a right against the State of Georgia, and hence against its lessee CSX, to use the crossings at Depot and Dobbs Streets?" Because there can be no adverse possession or implied dedication of state property to a municipal corporation, which is a creature of the state, we hold that the City of Marietta cannot acquire a right to use the pedestrian crossings over the railroad right-of-way without the state's express consent. Therefore, our answer to the certified question is no.

The State of Georgia built and operated the W&A Railroad between Atlanta and Chattanooga from 1836 to 1870. Since 1870, the state has leased the railroad operation to private companies. CSX, the current lessee, is operating under a 1986 amendment of the lease contract.[2] Article 14 of the lease agreement provides that CSX "may remove and cause to be discontinued, as permitted by law, any or all encroachments and other adverse uses and occupancies in and upon the right-of-way of the Western and Atlantic Railroad."[3]

Since 1978, both Depot Street and Dobbs Street have served as pedestrian crossings over the railroad right of way. In 1996, CSX closed the crossings to construct a second rail line and did not reopen them after the second line was completed. The city demanded that the railroad reopen Dobbs and Depot Streets and sued CSX when it refused to do so. After the State of Georgia filed a brief as an amicus curiae, the federal district court concluded that the pedestrian crossings were encumbrances on the railroad right-of-way and that CSX had authority to close the crossings unilaterally under its lease agreement. The city appealed and the Eleventh Circuit requested that this Court address whether the state made an implied dedication of the crossings as a public passage through the public's long use of them.

There can be no adverse possession against the state,[4] county, or city. In a case involving the W&A Railroad, this Court held that no prescription runs against the state. "[T]his is true of the state's title to the Western and Atlantic railroad as well as the balance of the public domain, and it does not matter whether the road was for the time being in the hands of the state's own officers, or of her tenants or lessees."[5] Later, this Court extended the same rule to municipal corporations and counties, holding that adverse possession and prescription do not run against political subdivisions of the state con-

---

[2] See 1986 Ga. Laws 231.
[3] See id. at 255.
[4] OCGA § 44-5-163.
[5] *Glaze v. Western & A. R.R. Co.*, 67 Ga. 761 (1881); *Kirschner v. Western & A. R.R. Co.*, 67 Ga. 760 (1881).

cerning land that they hold for the benefit of the public.[6] Still later, we held that this rule applies whether the city and county held the property for a public or proprietary purpose.[7]

Just as there can be no adverse possession against the state, there can be no implied dedication of state property. To show that property has been dedicated, the owner must intend to dedicate the land for public use and the public must accept the dedicated property.[8] Unlike every case cited by the city, which involved the implied dedication of *private* property, this case involves *public* property. As a theoretical principle, it is difficult to envision how the state could intend to dedicate its property for public use since, by definition, the state's property is already public property.[9] It is also difficult to conceptualize how there could be a dedication of state property by implication in favor of a municipality, which is a political subdivision created by the state. "This case presents the extraordinary spectacle of the *creature* of the state attempting to exercise its power and authority derived from the state against the state herself, without her consent."[10]

Moreover, a review of the statutes governing state property, including specifically the Western and Atlantic Railroad property, shows that the General Assembly has provided a way for municipalities to obtain the state's consent.[11] The State Properties Code states that the railroad is owned exclusively by the state; the General Assembly has delegated to the State Properties Commission the power to manage, oversee, and preserve the railroad; and the General Assembly must approve any lease or sale proposals and any amendments to existing lease agreements related to the property.[12] Given that the General Assembly has provided an explicit method for municipalities to seek access to state property, we decline to extend the theory of the implied dedication of private property to public property owned by the state.

Nothing in the code sections or cases cited by the city contradicts our holding that there can be no implied dedication of state property to a municipality.[13] This case involves the title to state property; those cases dealt with the operation and liability of the railroad

---

[6] *Norrell v. Augusta Ry. & Elec. Co.*, 116 Ga. 313, 315 (42 SE 466) (1902); *Adams v. Richmond County*, 193 Ga. 42 (17 SE2d 184) (1941).

[7] See *Grand Lodge, Independent Order of Odd Fellows v. City of Thomasville*, 226 Ga. 4 (172 SE2d 612) (1970).

[8] *Healey v. City of Atlanta*, 125 Ga. 736, 737 (54 SE 749) (1906).

[9] Black's Law Dictionary 1233 (7th ed. 1999).

[10] *Mayor & Council of Atlanta v. Central R.R. & Banking Co.*, 53 Ga. 120, 124 (1874).

[11] See generally OCGA § 50-16-34 (setting out powers and duties of State Properties Commission).

[12] See OCGA §§ 50-6-31, 50-6-34.

[13] See OCGA §§ 50-16-101, 50-16-102.

owned by the state. This case decides whether the state retains title to the W&A Railroad or whether the city has acquired title by public use of the pedestrian crossing. Those cases required the company leasing the W&A Railroad to follow the same safety regulations as other railroad companies.[14]

In response to the certified question, we conclude that the City of Marietta and the public cannot acquire a right against the State of Georgia to use the crossings at Depot and Dobbs Streets by implied dedication, but must obtain the express consent of the state.

*Question answered in the negative. All the Justices concur.*

DECIDED JULY 10, 2000.

*Haynie, Litchfield & Crane, Douglas R. Haynie, Emilie K. Petrovich,* for appellant.

*Casey, Gilson, Williams & Shingler, Matthew D. Williams, Sandra Gray,* for appellee.

*Walter E. Sumner,* amicus curiae.

---

[14] See *Western & A. R.R. v. Gray,* 172 Ga. 286 (157 SE 482) (1931); *Louisville & N. R.R. Co. v. Hames,* 135 Ga. 67 (68 SE 805) (1910).