**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**November 18, 2024**

# In the Court of Appeals of Georgia

A24A0969, A24A0970. NOFREE, LLC v. THE STATE OF GEORGIA; and vice versa.

WATKINS, Judge.

These interlocutory appeals arise from a petition to quiet title filed by NoFree, LLC, regarding approximately 1,000 acres of coastal marshland in Bryan County ("the peninsula"), naming the State of Georgia and any other persons who may have an adverse claim, and contending it had title originating from the State's grant of the property to James Shuman in 1834 ("Shuman grant"). Only the State challenged the petition. After the parties filed cross-motions for summary judgment, the trial court determined that questions of material fact were presented and denied the cross-motions, certifying its order for immediate review. This Court granted the parties' applications for interlocutory appeal.

In Case No. A24A0969, NoFree argues that the trial court erred by denying its motion for summary judgment because, among other things, the boundary description in the Shuman grant was sufficient as a matter of law to convey the peninsula to Shuman (and to NoFree therefrom), and the trial court should have presumed the Shuman grant was valid. In Case No. A24A0970, the State argues that the trial court erred by denying its motion for summary judgment because the Shuman grant was void for a number of reasons and did not vest title in NoFree in light of the Protection of Tidewaters Act, OCGA § 52-1-1, et seq. For the reasons that follow, we conclude that NoFree is entitled to summary judgment in this case.

We review a grant or denial of summary judgment, questions of statutory interpretation, and interpretation of contracts of conveyance de novo.[1] And we construe the evidence in the light most favorable to the nonmovant when reviewing an order disposing of a motion for summary judgment.[2]

---

[1] See *Strickland v. CMCR Investments LLC*, 279 Ga. 112, 114 (1) (610 SE2d 71) (2005) ; *Herren v. Mitchell Elec. Membership Corp.*, 323 Ga. App. 517 (747 SE2d 63) (2013); *Hill v. First Atlantic Bank*, 323 Ga. App. 731, 732 (747 SE2d 892) (2013).

[2] See *Herren*, 323 Ga. App. at 517.

The record shows that NoFree filed a petition to quiet title as to all the world regarding a certain distinctively shaped piece of property near a large bend of the Ogeechee River.[3] The property is a long "balloon shaped" peninsula bounded on three sides by the river except for a narrow "neck" of land on the property's southwest side connecting it to the Bryan County mainland, and the peninsula consists largely of marshland that is subject to the ebb and flow of the tide. In 2016, NoFree acquired the peninsula via a limited warranty deed.[4] In its petition, NoFree included a chain of title of 49 links, beginning with the 1834 grant from the State to Shuman.

In May 1834, a State headright warrant directed the county surveyor to survey and prepare a plat of "a tract of lands which shall contain five hundred acres in

---

[3] See OCGA § 23-3-60 et seq. See also Appendix 1, infra. NoFree's petition describes the area as "a marsh and rice island bound by the Ogeechee River and laced with canals and dikes for rice propagation."

[4] The seller's permitted exceptions attached to the limited warranty deed included, "[t]itle, rights[,] and claims of the State of Georgia for any part of the insured premises which is determined to be Coastal Marshlands within the estuarine area as defined in the 'Coastal Marshlands Protection Act of 1970[;]'" and "[t]itle to that portion of the property lying below the mean high watermark of the Ogeechee River and all tributaries and branches thereof, and of all canals, creeks[,] or waterways adjoining, abutting or flowing through the captioned property, to the extent same are deemed to be navigable waters.'"

[Bryan] County" for Shuman. In September 1834, a survey plat was prepared that refers to the May 1834 warrant, which plat includes a hand-drawn sketch of the property showing a balloon-shaped peninsula with a small strip of land at the bottom; the entire peninsula is bounded on all other sides by the "Great Ogeechee River," and it is labeled as "James Shuman 500 acres Marsh Land."[5] In December 1834, a grant was prepared giving Shuman property described as 500 acres lying in Bryan County, "butting and bounding on all sides by vacant lands . . . [h]aving such form, slope, and marks as appear by a plat of the same hereunto annexed[.]"

Notably, the 1834 plat is very similar in appearance to the modern survey of the peninsula, except the area is now measured to contain approximately 1,000 acres.[6]

The State challenged the quiet title petition and later moved for summary judgment. The State's main contention was that the Shuman grant was void on its face and did not result in NoFree's ownership of the peninsula because the grant's description was insufficient to convey it to Shuman. NoFree responded to the motion and also filed its own cross-motion for summary judgment.

---

[5] See Appendix 2, infra.

[6] Compare Appendix 1 and Appendix 2, infra.

Per NoFree's request, the trial court appointed a special master. After an evidentiary hearing, the special master issued a report recommending that the trial court grant NoFree's motion for summary judgment and deny the State's motion for summary judgment. The special master found that the Shuman grant and 1834 plat were clear in their combined description of the land, the title chain was sufficiently legible to establish title as passing to NoFree from the Shuman grant, and the State had failed to rebut NoFree's evidence supporting the petition to quiet title.

The State objected to the report, and NoFree responded. After additional argument, the trial court issued an order denying the cross-motions for summary judgment.[7] The trial court explained that there were inconsistencies in the boundary language of the Shuman grant compared to the 1834 plat creating a question of fact for a jury to resolve; it also stated that other unspecified fact questions existed. These interlocutory appeals followed.

---

[7] The trial court initially indicated that it was inclined to grant the State's motion on the basis that the Shuman grant contained "no mention of beds of tidewaters or marshlands and d[id] not explicitly convey the beds of tidewaters." After further argument from NoFree, however, the trial court issued an the order denying both motions based on remaining jury questions.

1. We begin our analysis by recognizing several longstanding principles of Georgia law. First, "[t]he title to all lands originates in grants from the Government and, since its independence, from the state."[8] Second, under OCGA § 44-5-13, "[a] grantee of lands [from the State] takes nothing by implication [and] is confined to the terms of his grant; but every presumption is in favor of a grant." Third, under OCGA § 44-5-14, "[w]hen the land is subject to entry and grant, 20 years' possession of land under a claim of right shall authorize the courts to presume a grant."

The parties disagree as to how the foregoing principles should be harmonized with the Protection of Tidewaters Act.[9] The Act, which was enacted in 1992, provides that the State "continues to hold title to the beds of all tidewaters within the state, except where title in a private party can be traced to a valid Crown or state grant which explicitly conveyed the beds of such tidewaters."[10]

The interpretation of a statute is a question of law.[11] If "two statutes are in conflict, the later-enacted statute prevails over the one enacted earlier, and the more

[8] OCGA § 44-5-1.

[9] OCGA § 52-1-1 et seq.

[10] OCGA § 52-1-2.

[11] See *Harris v. Mahone*, 340 Ga. App. 415, 417 (1) (797 SE2d 688) (2017).

6

specific statute governs over the more general one."[12] Silence on a point, however, does not constitute a conflict.[13] And "[a]ll statutes relating to the same subject matter are to be construed together, and harmonized wherever possible."[14]

In this case, OCGA § 52-1-2 clearly constitutes the later-enacted and more specific provision regarding how title to tidal lands can be established. We thus conclude that to prevail on its claim for quiet title, NoFree must trace its ownership of the property to a valid grant from the State explicitly conveying those tidal beds. We further recognize that in *Black v. Floyd*, the Supreme Court held that for a grant to convey property subject to the Protection of Tidewaters Act, the "grant[ ] must be construed strictly against [the purported landowner] and nothing [can be] taken by implication."[15] The Supreme Court's conclusion in *Black* is entirely consistent — and indeed, an almost verbatim recitation — of the first clause of OCGA § 44-5-13. Although we are not aware of precedent applying the other principles of OCGA § 44-

---

[12] *Bellsouth Telecommunications LLC v. Cobb County*, 305 Ga. 144, 151 (1) (824 SE2d 233) (2019).

[13] *CL SNF, LLC v. Fountain*, 312 Ga. 416, 421 (863 SE2d 116) (2021).

[14] (Citation and punctuation omitted.) *Hartley v. Agnes Scott College*, 295 Ga. 458, 462 (2) (b) (759 SE2d 857) (2014).

[15] 280 Ga. 525, 526 (630 SE2d 382) (2006).

5-13 and OCGA § 44-5-14 in a case where the land purporting to be conveyed was covered by the Protection of Tidewaters Act, we see nothing in the Act, OCGA § 52-1-1 to OCGA § 52-1-10, that directly conflicts with the provisions of those statutes. We therefore conclude that to the extent OCGA §§ 44-5-13 and 44-5-14 are helpful in resolving the parties' dispute, those provisions may be applied in this case as in other contexts.

2. As outlined above, the trial court denied the parties' cross-motions for summary judgment on the ground that "the inconsistency between the boundary language of the [Shuman] grant and the language within the plat presents a question of fact that can only be resolved by a jury." This is not a valid basis to send the case to a jury, as "[t]he question of whether or not a description is sufficient to convey property[ ] is one of law for the courts to decide."[16]

On appeal, both parties assert that the trial court should have resolved the question of whether the Shuman grant contained a sufficient description of the property at issue as a matter of law in their favor. NoFree argues that the Shuman grant must be read in combination with the 1834 plat and that the documents,

_____

[16] *Murdock v. Ward*, 267 Ga. 303, 304 (1) (477 SE2d 835) (1996).

considered together, contain a sufficient description of the peninsula to convey title of the land. The State emphasizes that the grant document itself contained an insufficient description of the land to be conveyed and argues that the grant cannot be salvaged by the plat because the plat is inconsistent with the grant. The State further contends that the grant is void because it does not explicitly convey the beds of tidewaters, as required by the Protection of Tidewaters Act. We reject the State's arguments and conclude that the Shuman grant was sufficient to convey title of the land at issue.

*Description of the Property.*

A deed wherein the description of the property sought to be conveyed is so vague and indefinite as to afford no means of identifying any particular tract of land is inoperative either as a conveyance of title or as color of title. . . . One essential of a deed is that the description of the premises sought to be thereby conveyed must be sufficiently full and definite to afford means of identification. While it is not necessary that the instrument should embody a minute or perfectly accurate description of the land, yet it must furnish the key to the identification of the land intended to be conveyed by the grantor. If the premises are so referred to as to indicate his intention to convey a particular tract of land, extrinsic evidence is admissible to show the precise location and boundaries of such tract. The test as to the sufficiency of the description of property contained in a deed is whether or not it discloses with

sufficient certainty what the intention of the grantor was with respect to the quantity and location of the land therein referred to, so that its identification is practicable.[17]

This Court has "deemed deeds to be in law unambiguous, when the description in a deed is sufficient in conjunction with undisputed evidence to determine the conveyance."[18] Importantly, if "the descriptive clauses in a deed contain particular words of description, and also refer to a plat, and the plat is more definite than the particular words of description, the description by plat shall control as to the property conveyed."[19]

Applying these principles to the facts of this case, we conclude that the Shuman grant contained an adequate description of the property. First, we agree with NoFree that the 1834 plat should be considered as part of the grant. Second, we conclude that in light of the plat, the grant was sufficient to convey title of the peninsula.

---

[17] (Citations and punctuation omitted.) *Gould v. Gould*, 194 Ga. 132, 135 (1) (21 SE2d 64) (1942).

[18] (Punctuation omitted.) *Gibson v. Rustin*, 297 Ga. App. 169, 174 (4) (676 SE2d 799) (2009).

[19] *Patrick v. Sheppard*, 182 Ga. 788, 790-791 (187 SE 379) (1936).

It is true that the grant described the land as being bounded "on all sides by vacant lands" while the plat depicted the land as being bound by the Great Ogeechee River. But the grant also described the land as "[h]aving such form, shape, and marks, as appear by a plat of the same hereunto annexed[.]" By referring to the plat, the grant provided a "key to the confines of the land purporting to be conveyed[,]"[20] and the plat's description of the land controls over the grant's more general description.[21] Significantly, there does not appear to be any actual dispute as to what land was at issue. Indeed, in its brief in support of summary judgment, the State asserted that the land "is readily recognizable by its shape and form as the same Property which is claimed by [NoFree] and is the subject of this litigation." Thus, the difference in how the grant and plat described the property's boundary lines does not render the grant insufficient to convey title of the property.

It is also true that while both the grant and the plat described the land as containing 500 acres, the peninsula is now measured to contain 1,000 acres.[22] But as

---

[20] See *Gould*, 194 Ga. at 135

[21] See *Patrick*, 182 Ga. at 790-791.

[22] Notably, the State does not argue that the difference in acreage renders the grant's description of the property insufficient so as to make the grant void.

the Supreme Court has observed, "unless there is an express covenant that there is the quantity of land mentioned, the clause as to quantity is considered simply as a part of the description, and will be rejected if it is inconsistent with the actual area, when the same is capable of being ascertained by monuments and boundaries. The mention of the quantity of land conveyed may aid in defining the premises, but it can not control the rest of the description."[23] Thus, this irregularity in acreage does not render the grant insufficient to convey title of the property.[24]

### Protection of Tidewaters Act.

As noted above, the Act provides that a private party cannot establish itself as the owner of "the beds of tidewaters" unless its title "can be traced to a valid Crown

---

[23] *Collinsville Granite Co. v. Phillips*, 123 Ga. 830, 842 (11) (51 SE 666) (1905). Accord *Hartwell R.R. Co. v. Hartwell First United Methodist Church*, 370 Ga. App. 134, 141 (1) (894 SE2d 481) (2023) ("Where the calls of a deed are for natural as well as known artificial objects, both courses and distances, when inconsistent, must be disregarded. . . . Thus courses and distances yield to natural, visible, and ascertained objects.").

[24] See *Gibson*, 297 Ga. App. at 175 (4) (deed was unambiguous despite "some inconsistencies with the plat," including those related to inaccuracies of earlier surveying tools, because "the plat did not reflect an intent to convey something other than what was specified in the deed[ ]").

or state grant which explicitly conveyed the beds of such tidewaters."[25] And the Act defines "tidewaters" as "the sea and all rivers and arms of the sea that are affected by the tide, where the tide rises and falls, which are capable of use for fishing, passage, navigation, commerce, or transportation, and which are located within the jurisdiction of the State of Georgia."[26]

Here, the Shuman grant itself does not identify the property as the beds of tidewaters, but on the 1834 plat the peninsula was labeled as "marshland." As discussed above, the plat must be considered as part of the grant. Thus, the grant, in its entirety, demonstrated "a clear intent on the part of the [State] to part with ownership [of property it identified as marshland]."[27] We therefore conclude that it was sufficient to convey title under the Act.

On this point, we recognize that the term "marshland" is facially different than the term "beds of tidewaters." But any differences between the meanings of those

---

[25] OCGA § 52-1-2.

[26] OCGA § 52-1-3 (4).

[27] Compare *Black*, 280 Ga. at 527 (where grant provided that the grantee would be required to clear "swamp, sunken grounds or marsh '*if any such contain herein*[,]'" the grant did not explicitly convey the beds of the creek) (emphasis added).

terms do not appear to be relevant to this case. Indeed, even in its brief on appeal, the State argued that "[n]othing in the grant indicates that the State intended to part with the marshlands." Again, this reflects the State's position that the plat should not be treated as part of the grant; it does not reflect any disagreement with the principle that the plat's labeling of the peninsula as "marshland" was sufficient to identify it as the "beds of tidewaters" as required by the Act.[28] This approach is consistent with the Supreme Court's holding in *Black v. Floyd*, where the Supreme Court held that the grants at issue "fail[ed] as conveyances of marshland" under the Act.[29] This approach

---

[28] Specifically, the State argues: "The grant at issue here describes the property as '500 acres . . . in the County of Bryan . . . butting and bounding on all sides by vacant lands.' There is not even the mention of marshlands, the beds of tidewaters, or the beds of the Ogeechee River. Nothing in the grant indicates that the State intended to part with the marshlands."

[29] (Punctuation omitted.) 280 Ga. at 526-527. ("A mere general reference to the requirement that Sir Sterling, as the grantee, clear and drain three acres of swamp, sunken grounds or marsh 'if any such contain herein' is not an explicit conveyance to him of the beds of Sterling Creek such as would show a clear intent on the part of the Crown to part with ownership thereof. . . . [Thus,] the grants fail as conveyances of marshland.") (citations and punctuation omitted).

is also consistent with authority from South Carolina, which has a similar history of coastal lands and Crown and State grants.[30]

For the foregoing reasons, we conclude that the Shuman grant was sufficient to convey title of the peninsula depicted in the 1834 plat. We note, however, that the State contends it is entitled to summary judgment for additional reasons unrelated to the language of the Shuman grant. We now address each argument in turn.[31]

3. As its first alternative argument, the State contends that even if the Shuman grant is legally sufficient on its face, it was nonetheless invalid because the underlying warrant was vague and indefinite. This presents a question of law, which we resolve in favor of NoFree.

---

[30] See *State v. Holston Land Co.*, 248 SE2d 922 (272 S.C. 65) (1978) (rejecting the argument that no specific language in the grant or plat indicated an intention to convey property below the mean high water mark and concluding: "[t]he law in South Carolina is well settled that a grant conveying 'marshland' can give rise to private ownership of property to the mean low water mark[ ]").

[31] "The trial court did not address these arguments, given that it ruled [there is a genuine dispute of material fact as to the boundary lines on the grant and plat]. Nevertheless, the material facts are undisputed. Therefore, in the interest of judicial economy, we exercise our discretion to decide these questions, rather than remanding for the trial court to address them in the first instance." *Massey v. Allstate Ins. Co.*, 341 Ga. App. 462, 469 (2) n.9 (800 SE2d 629) (2017).

Under the headright system, an individual seeking a grant of land from the State was required to file an application for a warrant directing the county surveyor to survey the land.[32] The application was subject to caveat; thus, the application and warrant needed to describe the land with sufficient particularity to enable a survey and to draw relevant caveats.[33] If no caveat to the application or warrant was filed, the grant was issued by the State as a matter of course.[34]

Here, the warrant that preceded the Shuman grant described the property as "a tract of lands which shall contain five hundred acres in said county" and did not include any identifying references. It appears to be undisputed that this description would have been insufficient to survive a caveat to the warrant.

The State argues that the insufficiency of the warrant renders the resulting grant invalid, but as NoFree points out, the State has not identified any precedent holding that a headright grant is outright void if the underlying warrant is defective. The State also has not identified any precedent establishing that, even if a headright

---

[32] See *Roberts v. Hilton & Dodge Lumber Co.*, 136 Ga. 473, 474 (71 SE2d 786) (1911) (describing the headright system).

[33] See id.

[34] See id.

grant was facially valid when it was issued, it can be deemed invalid 200 years later due to deficiencies in the underlying warrant. Indeed, the Supreme Court's discussion in *Robert v. Palmer*[35] suggests the opposite. In that case, the Supreme Court concluded that the warrant at issue was insufficient and that the objection to the warrant was properly sustained. The Supreme Court further stated, however: "We would not be understood as holding that this uncertainty in the warrant would vitiate a grant, which either sets out upon its face a description of the land, or refers to the plat for that purpose."[36]

We now conclude, contrary to the State's position, that deficiencies in the warrant preceding the Shuman grant did not render that grant invalid.

4. Next, the State asserts that the Shuman grant is void because the land was previously reserved as a common for the town of Hardwicke. We are not persuaded.

Assuming the State's reservation of the land as a common constituted a dedication to public use, such dedication (even if accepted and not subsequently

---

[35] 14 Ga. 349 (1853).

[36] Id. at 390.

abandoned) did not cause the State to lose title to the land.[37] "When a dedication is made of a street in a City, or a public square, or a common, by the proprietor, . . . [t]he proprietor is still the owner of the fee[.]"[38] Absent conveyance to another entity — which the State does not allege happened here — the State retained title to the peninsula after the alleged dedication.[39] Thus, any prior reservation of the land for use as a common would not result in the Shuman grant being void.

5. The State contends that the Shuman grant is void because Shuman did not comply with the applicable headright laws and because of fraudulent circumstances in the creation of the grant. First, the State asserts that Shuman's failure to cultivate the land caused the property to revert back to the State. But NoFree has shown that the law the State cites for this assertion did not apply to land in Bryan County, where the peninsula is located. Based on the laws identified by the parties, Shuman's alleged failure to settle and cultivate the land would have resulted in him owing a treble tax

---

[37] See *Brown v. East Point*, 148 Ga. 85 (95 SE2d 962) (1918).

[38] *Mayor & Council of Macon v. Franklin*, 12 Ga. 239, 244-245 (1852).

[39] Compare *Dart v. Orme*, 41 Ga. 376 (1870) (affirming lower court's cancellation of headright grants where land was dedicated for the city of Brunswick, title to lots passed to private persons, and the State subsequently purported to issue headright grants for those same lots).

— not in the land reverting back to the State. Lack of cultivation, therefore, did not result in the Shuman grant becoming invalid.

Second, the State asserts that the grant is void because the circumstances surrounding the grant were fraudulent. Noting that it was Shuman's brother-in-law, Cyrus Bird, who surveyed the property, the State alleges that the survey "drastically [and purposefully] understated" the size of property in order to avoid paying higher fees. The State further notes that Shuman conveyed the property to Bird only days later, but Bird waited twelve years to record that deed. NoFree argues that these circumstances do not establish fraud, emphasizing that surveying technology of the 1830s was less precise than the tools available today. We conclude that the State has failed to establish a jury question on the issue of fraud, as its allegations amount to no more than speculation or conjecture.[40]

6. The State summarily argues that NoFree failed to trace its title in an unbroken chain of title to the 1834 grant because NoFree is missing a deed for the

---

[40] "We recognize that reasonable evidentiary inferences can raise a sufficient issue of material fact to preclude summary judgment. A party, however, cannot avoid summary judgment by citing an inference based on mere possibility, conjecture, or speculation." (Citation and punctuation omitted.) *Grossman v. Brown & Webb Builders, Inc.*, 255 Ga. App. 897, 900 (2) (567 SE2d 116) (2002).

fourth link in its chain of 49 links and because many of the documents are illegible.

In response to this argument, NoFree contends that the recitals in the sixth link can, essentially, fill the gap as evidence of the fourth link. In support of this argument, NoFree points us to the principle that recitals can serve as evidence of a conveyance.[41] In its reply brief, the State does not address NoFree's reliance on this principle at all. Additionally, the State has introduced no evidence to refute this recital.[42] And while the State has pointed to certain pages that are illegible, as NoFree points out in

---

[41] See, e.g., OCGA § 24-14-26 (b) (5); *Harper v. Paradise*, 233 Ga. 194, 198-199 (210 SE2d 710) (1974).

[42] See *Herrington v. Church of Lord Jesus Christ*, 222 Ga. 542, 544 (1) (150 SE2d 805) (1966) ("[A]lthough the recital in the deed was not evidence, the deed was sufficient to show prima facie good title in the grantee. The defendants introduced no evidence to refute such recital.").

response, there are clearer versions in the record.[43] The State has thus failed to demonstrate that there is any genuine issue of material fact.[44]

7. Finally, the State asserts that even if the Shuman grant is deemed valid, NoFree's "ownership of the property is limited to only 500 acres."[45] In support of this contention, the State relies on the principle that a public grant must be construed strictly against the grantee. We applied that principle above when we concluded that the grant was valid to convey title of the peninsula. This argument is therefore without merit.

---

[43] In reply, the State points to only one document (the fifth link) in the copies referenced by NoFree that the State contends is "truly illegible." The State's reliance on *Black v. Floyd* is misplaced. See 280 Ga. at 526 (1) (holding that the private parties who claimed to hold title to certain tidal marshlands should have produced any additional evidence or testimony they had to support their claim of title where their copies of the original Crown grants were almost completely illegible and thus not entitled to evidentiary consideration).

[44] See *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-248 (106 SCt 2505, 91 LE2d 202) (1986); *Porter v. Felker*, 261 Ga. 421 (405 SE2d 31) (1991).

[45] The State further contends, without elaboration, that even if the Shuman grant is deemed valid, "any use contrary to the Protection of Tidewaters Act is prohibited." By failing to support this claim with any argument or citations to authority, the State has abandoned its argument on this issue. See Court of Appeals Rule 25 (d) (1).

For the foregoing reasons, we conclude that NoFree is entitled to summary judgment on its claim for quiet title. We remand for the trial court to enter summary judgment in favor of NoFree.

*Judgments reversed and cases remanded with direction. Hodges, J., concurs in judgment only. Doyle, P.J., dissents.*

# Appendix 1.



Appendix 2.



# In the Court of Appeals of Georgia

A24A0969, A24A0970. NOFREE, LLC v. THE STATE OF GEORGIA, and vice versa.

DOYLE, Presiding Judge, dissenting.

Respectfully, I dissent.

Generally, "[t]he title to all lands originates in grants from the Government and, since its independence, from the state."[1] "[A] grantee of lands [from the State] takes nothing by implication [and] is confined to the terms of his grant; but every

---

[1] OCGA § 44-5-1. "The form of grants heretofore used in this state is established, and a substantial compliance with such form shall be held sufficient." OCGA § 44-5-3.

presumption is in favor of a grant."[2] Moreover, except as to the State,[3] "[w]hen the land is subject to entry and grant, 20 years' possession of land under a claim of right shall authorize the courts to presume a grant."[4]

In 1992, the General Assembly enacted the Protection of Tidewaters Act in which it "declar[ed] that the State of Georgia became the owner of the beds of all tidewaters within the jurisdiction of the State of Georgia as successor to the Crown of England and by the common law."[5] The Act states that unless "title in a private

---

[2] OCGA § 44-5-13. Compare *Black v. Floyd*, 280 Ga. 525, 526 (1) (630 SE2d 382) (2006) (reviewing the plaintiffs' claims to certain property based on "two Crown grants, which must be 'construed strictly against [them]'").

[3] See OCGA § 44-5-163 ("Possession of real property in conformance with the requirements of Code Section 44-5-161 for a period of 20 years shall confer good title by prescription to the property against everyone except the state and those persons laboring under the disabilities stated in Code Section 44-5-170.").

[4] OCGA § 44-5-14.

[5] OCGA § 52-1-2. See also *Jones v. Oemler*, 110 Ga. 202, 206-207 (35 SE 375) (1900) ("There can be no question that a State owns the beds of all tide-waters within its jurisdiction. It has as absolute jurisdiction and control over such territory as it has over any other property it may own. It has the same power to grant, sell, or lease such beds, or any portion thereof, to any of its citizens, upon any terms or conditions which its legislature might prescribe, to the same extent that it would have the right to dispose of its wild or other lands which it owns.").

2

party can be traced to a valid Crown or state grant which explicitly conveyed the beds of such tidewaters," then the State holds title.[6]

The description in the grant conveyed to Shuman 500 acres of land in Bryan County "butting and bounding on all sides by vacant lands . . . [h]aving such form, slope, and marks as appear by a plat of the same hereunto annexed[.]" The 1834 plat shows a bulbous portion of land bordered on three sides by the Great Ogeechee River and clearly marked "James Shuman 500 acres Marsh Land." Pretermitting whether the descriptions in the plat and the grant together satisfy the exception in OCGA § 52-1-2 that requires an explicit grant of tidewater beds to a private party (here, Shuman), because of the plat's incorporated reference to "Marsh Land,"[7] the grant is void.

---

[6] OCGA § 52-1-2 ("The General Assembly further finds that the State of Georgia, as sovereign, is trustee of the rights of the people of the state to use and enjoy all tidewaters which are capable of use for fishing, passage, navigation, commerce, and transportation, pursuant to the common law public trust doctrine. Therefore, the General Assembly declares that the protection of tidewaters for use by the state and its citizens has more than local significance, is of equal importance to all citizens of the state, is of state-wide concern, and, consequently, is properly a matter for regulation under the police powers of the state." And because of these findings, the Act authorizes "the commissioner of natural resources to remove or require removal of certain structures from such tidewaters in accordance with" the Act.).

[7] Compare *Black*, 280 Ga. at 526-527 (1) ("[a] mere general reference to the requirement that . . . the grantee, clear and drain three acres of swamp, sunken grounds or marsh 'if any such contain herein' is not an explicit conveyance to him of

3

The peninsula as bordered by the river encompasses nearly 1,000 acres of land. Yet the 1834 warrant taken by Shuman was for only 500 acres of land. The warrant instructed the surveyor to prepare a tract of lands containing 500 acres in Bryan County, and both the Shuman grant and the plat reiterate this quantity of 500 acres.[8] It is the uppermost limit of land which the State attempted to grant to Shuman. And while the plat implies that the entire portion of the peninsula was granted to Shuman, he did not take a warrant for and was never granted 1,000 acres of land. Aside from the Ogeechee River, neither the 1834 plat nor the language of the grant contains a key or sufficient description from which it could be determined where Shuman's 500

_____

the beds [of tideland]").

[8] The cases cited by NoFree to support its contention that the plat provides an adequate description upon which it should receive the entire peninsula despite the warrant, grant, and plat limiting language of 500 acres do not apply in this case because they either involve prescription or additional descriptive language. See *Rowland v. Matthews*, 153 Ga. 849 (113 SE2d 442) (1922); *May v. Sorrell*, 153 Ga. 47, 49 (111 SE 810) (1922). The implied description of the property via the plat cannot win over the explicit limit of acreage in the documents because it is a request for land through a warrant that results in a grant from the State, not the other way around.

acres lie within the 1,000 acre peninsula.[9] Thus, this grant and plat are void for lack

of an adequate description.[10]

If this case had involved two private parties, perhaps uninterrupted possession

of the entire peninsula by NoFree and its predecessors based on color of title under

the Shuman grant and plat would have been enough to defeat claims to the property

---

[9] See *Templeton v. Howell*, 288 Ga. 32, 33 (701 SE2d 185) (2010) ("In the . . . absence of a description of the one-acre tract with the required degree of certainty, [the document's] language needed to 'furnish a key by which [the one-acre tract] may be sufficiently identified by the aid of extrinsic evidence,' and, failing to do so, the devise of the property excepting that one-acre tract was void.") (citations and punctuation omitted). Compare *Dover v. Higgins*, 287 Ga. App. 861, 863-864 (1) (652 SE2d 829) (2007) (explaining the evidence available to a jury to determine markers of property line in a boundary dispute); *Martin v. Patton*, 225 Ga. App. 157, 165 (2) (483 SE2d 614) (1997) (finding deed description sufficient "because all four boundaries were definite and certain, based upon a natural monument (creek), man-made boundaries (roads), abutting property lines, and the land lot line, even though the land lot line had not been previously surveyed and located on the ground, because the land lot line is an exact description that can be located on the ground").

[10] See *Luttrell v. Whitehead*, 121 Ga. 699, 700 (49 SE 691) (1905) ("A deed is not invalid where the description is imperfect, if the instrument refers to extrinsic data by means of which the land may be identified. Likewise an ambiguous descriptive clause may be aided by aliunde evidence. But such imperfect or ambiguous descriptions must not be confounded with a description utterly lacking in definiteness. A deed which fails to describe any particular land or to furnish any key to the confines of the land purporting to be conveyed is void."); *Martin*, 225 Ga. App. at 165 (2) ("If an area is indefinite and the description does not fix the boundaries, then the description is void."). See also *Strickland v. CMCR Investments LLC*, 279 Ga. 112, 114 (1) (610 SE2d 71) (2005).

5

by other individuals because the grant would have been presumed valid.[11] But this proceeding involves the question as between the State and NoFree, and neither prescription nor adverse possession apply against the State.[12] Therefore, no presumption of validity can save the void grant in this instance.[13] Because the Shuman grant is void, NoFree cannot trace its title to a valid state grant. Therefore, the State holds title to the peninsula pursuant to the common law public trust doctrine under the Protection of Tidewaters Act.[14] Accordingly, I would reverse the cases and remand to the trial court for entry of summary judgment in favor of the State.

---

[11] See OCGA § 44-5-14. See also *Houston v. State*, 124 Ga. 417, 420 (52 SE2d 757) (1905), citing *Calhoun v. Cawley*, 104 Ga. 335, 338-339 (30 SE 773) (1897); *Vickery v. Scott*, 20 Ga. 795, 798-803 (1856) (explaining that grants could not be collaterally attacked as void or invalid by a party other than the State); *Hilliard v. Doe*, 7 Ga. 172 (1849).

[12] See *City of Marietta v. CSX Transp.*, 272 Ga. 612, 613 (533 SE2d 372) (2000) (neither adverse possession nor prescription apply against the State); *Moody v. Fleming*, 4 Ga. 115, 118-119 (1848) ("statutes of limitation do not run against the State"; no adverse possession against the State, even under the color of title of a purported State grant).

[13] See OCGA § 44-5-163. See also *City of Marietta*, 272 Ga. at 613; *Moody*, 4 Ga. at 118-119; *Hilliard*, 7 Ga. at 179 (holding unconstitutional an act allowing for legislative correction of certain land grants, explaining that such unilateral action by the State was foreclosed unless the State pursued the issue in court).

[14] See OCGA § 52-1-2.